ASUNCIÓN PERELES, demandante y apelante, *v.* JUAN MARTINÓ y FELIPA MARTINÓ, demandados y apelados.

Núm. 10464.—*Sometido:* Agosto 26, 1952. *Resuelto:* Septiembre 30, 1952.

*Benjamín Ortiz* y *Guillermo S. Pierluisi,* abogados del apelante; *Félix Ochoteco, Jr.,* abogado de los apelados.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del tribunal.

Asunción Pereles vivió en concubinato con Lorenzo Martinó hasta la fecha del fallecimiento de éste último, ocurrida en el mes de agosto del año 1946. A su fallecimiento dicho Lorenzo Martinó dejó bienes valorados en la suma de $125,625.97. ([1])

Martinó falleció abintestato dejando como únicos y universales herederos a sus hermanos Juan y Felipa Martinó, quienes adquirieron, en tal concepto, los bienes dejados por su referido causante.

Dos años después del fallecimiento de Lorenzo Martinó, su concubina Asunción Pereles radicó en el antiguo Tribunal de Distrito de Puerto Rico, Sección de Bayamón, una demanda contra los herederos de aquél sobre división de comunidad, la que fué más tarde sustituída por otra enmendada. En la súplica de la demanda enmendada se soli-

---

([1]) En esta suma fueron valorados dichos bienes por el Departamento de Hacienda a los fines de la imposición de la contribución sobre herencia.

cita que se ordene la división entre la demandante y los demandados de la comunidad de bienes existente entre aquélla y Lorenzo Martinó y que se condene a los demandados a entregar y pagar a la demandante una participación igual a la mitad de los bienes dejados por su concubino o aquella participación e interés que el tribunal considere le corresponde en los mismos. Dicha demanda está predicada en que la demandante contribuyó con sus bienes y su trabajo en la adquisición del caudal dejado por Lorenzo Martinó existiendo un convenio entre ellos para compartir los bienes que acumularan, y que aun sin tal convenio, ella contribuyó con cierto trabajo y capital que le da derecho a determinada participación en los mismos. Los demandados contestaron aceptando ser los únicos y universales herederos de Lorenzo Martinó y que en tal concepto están en posesión de los bienes dejados por su causante pero negaron que la demandante Asunción Pereles contribuyera con dinero o trabajo en la adquisición de dichos bienes o que existiera convenio alguno entre ella y su concubino para compartir dichos bienes.

Así trabada la contienda se celebró el juicio correspondiente. Durante el mismo la demandante ocupó la silla testifical para declarar a su favor y el tribunal inferior, ante la oposición de los demandados, se negó a admitir en evidencia aquella parte de su testimonio referente a transacciones habidas entre ella y el finado Lorenzo Martinó sobre los bienes de éste, así como sobre las relaciones hechas a ella por el intestado sobre tales bienes. Practicada la demás prueba que ofrecieron ambas partes, el tribunal inferior dictó sentencia desestimando la demanda con las costas.

Contra esa sentencia la demandante interpuso el presente recurso de apelación señalando, como único error cometido por la corte inferoir, el siguiente:

"Que la corte inferior cometió error al no permitir declarar a la demandante, doña Asunción Pereles, en relación con las transacciones habidas entre ella y el finado, don Lorenzo Mar-

tinó, aplicando indebidamente la sección tercera de la Ley para Prescribir Quiénes son Testigos Hábiles, aprobada el 10 de marzo de 1904."(²)

■■■ Arguye la apelante que la resolución del tribunal inferior rechazando parte de su testimonio es errónea por cuanto los hechos de este caso no justifican la aplicación de la sección 3 de la Ley de 10 de marzo de 1904, ni la doctrina establecida en los casos de *Wilcox* v. *Axtmayer et al.*, 23 D.P.R. 343; *Cestero* v. *Sucn. Cestero*, 35 D.P.R. 991; *De la Rosa* v. *Sucn. Quevedo*, 47 D.P.R. 175 y *Sánchez* v. *Sánchez*, 58 D.P.R. 577, e insiste en que habiendo el tribunal inferior dictaminando correctamente que la demandante ejercitaba esta acción por su propio derecho, y no como heredera del causante de los demandados,(³) ha debido aplicar la doctrina establecida en el caso de *Boscio* v. *Vilá*, 67 D.P.R. 604. No

---

(²) La sección 3 de la Ley para Prescribir Quiénes son Testigos Hábiles, etc., dice así:

"En las demandas por o en contra de los albaceas testamentarios, administradores o tutores en las cuales pueda dictarse sentencia a favor o en contra de ellos como tales, ninguna de las partes podrá declarar contra la otra en lo referente a transacciones con, o relaciones hechas por el testador, intestado o pupilo, a menos que fuere llamado a declarar por la parte contraria; y las prescripciones de esta sección se aplicarán a todas las demandas por o en contra de los herederos y representantes legales de un finado, que se suscitaren de transacciones habidas con éste."

(³) Las Conclusiones de Hecho del tribunal inferior son breves y leen como sigue:

"Por el resultado de la prueba, la Corte considera probados los siguientes:

"HECHOS.

"1. Que la demandante vivió en concubinato con el Sr. Lorenzo Martinó, hasta la fecha del fallecimiento de este último, en agosto de 1946.

"2. Que a la fecha de su fallecimiento el Sr. Lorenzo Martinó dejó bienes valorados en la suma de $125,625.97 según valoración a los efectos de la imposición de la contribución sobre herencia por el Departamento de Hacienda.

"No hay base alguna en la prueba que pueda ser creída por la Corte, que indique al juzgador que la demandante contribuyó con determinados bienes, capital o trabajo, que le dé participación en los bienes dejados por el Sr. Lorenzo Martinó, a la fecha de su fallecimiento. Tampoco existe prueba alguna que pueda ser creída por la Corte, que existiera entre la demandante y el Sr. Lorenzo Martinó un acuerdo para compartir los bienes que acumularon. *Torres* v. *Roldán*, 67 D.P.R. 367."

estamos de acuerdo. Los hechos de aquel caso son distinguibles de los del presente. A los fines de la cuestión que discutimos, la diferencia fundamental entre uno y otro caso consiste en que en el de *Boscio* v. *Vilá*, supra, la acción no fué dirigida contra la demandada Isabel Vilá Martínez en su carácter de heredera de su padre. Ella ostentaba un título de dominio sobre el inmueble objeto del pleito a virtud de una escritura pública de compraventa otorgada a su favor por su padre y su madrastra, la allí demandante. Al morir su padre, la viuda de éste reclamó su mitad de gananciales y su cuota usufructuaria sobre dicho inmueble atacando el título que ostentaba la demandada a base de que el mismo era simulado.

Dijimos en aquel caso, a.las páginas 608, 609, lo siguiente:

"Si examinamos la demanda del presente caso, veremos que si bien la demandante reclama su cuota vidual con respecto a la cual su derecho surge como heredera de su esposo, también reclama su mitad de gananciales, y en este último caso su reclamación es por derecho propio y no como heredera. Es incuestionable que si la demandante se hubiera limitado a reclamar su participación en la sociedad de gananciales, sin hacer reclamación por la cuota vidual, no existiría controversia alguna en cuanto a este punto, por no ser de aplicación entonces la sección 3. Eso hubiera podido hacerlo la demandante porque el derecho a reclamar sus gananciales y el de percibir la cuota vidual son derechos independientes y separables. Por consiguiente una enmienda a la demanda eliminando todo lo que se refiere al usufructo vidual dejaría el caso fuera de la prohibición de la sección 3, permitiendo hacer justicia sustancial, si es que los hechos alegados en la demanda son ciertos.

". . . . . . . .

"Tendría razón la demandada en lo que respecta a su defensa de defecto de partes demandantes, (sic) si la demandante no eliminara de su demanda la reclamación del usufructo vidual. Eliminada dicha reclamación y no solicitándose entonces algo que pudiera corresponder a la demandante como herencia de su esposo, las otras hijas de éste no serían partes necesarias en el pleito."

Si bien este Tribunal dijo en aquel caso que allí no era de aplicación la sección 3 porque la reclamación de la demandante en cuanto a su participación en la sociedad de gananciales era por derecho propio y no como heredera de su esposo, al hacer tal pronunciamiento no ignoraba el hecho incuestionable de que la acción no iba dirigida contra los herederos de Vilá como tales porque en caso contrario forzoso hubiera sido considerar en dicho caso el alcance de las disposiciones de dicha sección 3 en cuanto a su aplicabilidad a las *demandas en contra de los herederos de un finado* ya que la prohibición establecida en esa ley cubre no solamente aquellas demandas iniciadas por los herederos de un finado que se susciten de transacciones habidas con éste sino que igualmente cubre a las *demandas contra tales herederos.*

Es incuestionable que la demanda en este caso va dirigida contra los herederos de Lorenzo Martinó. En su súplica (⁴) se solicita que se ordene la división de la comunidad de bienes existente entre la demandante y Lorenzo Martinó, el causante, y que se condene a sus herederos a entregar y pagar a dicha demandante una participación igual a la mitad de los bienes dejados a su fallecimiento por Lorenzo Martinó o aquella participación o interés que el tribunal considere le corresponde en los mismos. Es cierto también que la demandante reclama por derecho propio y no como heredera del finado Lorenzo Martinó. Puede argüirse que en relación con los bienes reclamados por la demandante, los demandados no deben considerarse como herederos y sí como comuneros y que al sostenerse la aplicabilidad de la susodicha sección 3 se estaría prejuzgando la contención de la demandante sobre el carácter de los bienes reclamados. Sin embargo los de-

---

(⁴) La súplica no forma parte de la demanda pero puede ser utilizada para fijar el alcance de la causa de acción ejercitada en la misma. *Antelo* v. *Yabucoa Sugar Co.,* 33 D.P.R. 103 e *Isern* v. *Benítez,* 57 D.P.R. 342. Aparte de ello, las alegaciones de la demanda no dejan lugar a dudas de que la acción se ejercita contra Juan y Felipa Martinó como únicos y universales herederos de Lorenzo Martinó.

mandados podrían invocar a su favor el mismo argumento porque si el tribunal inferior hubiera resuelto que el testimonio rechazado de la demandante no caía dentro de la sección 3, a base de que los bienes reclamados por ella no pertenecían a los demandados como herederos del finado, sino que en relación con tales bienes dichos demandados eran meros comuneros, entonces el tribunal hubiera prejuzgado la cuestión principal envuelta en la controversia, a saber: si los bienes dejados por el causante Lorenzo Martinó pertenecían a él en su totalidad o si parte de dichos bienes pertenecían a la demandante.

La regla de evidencia establecida por la susodicha sección 3 ha sido calificada por Wigmore como deplorable en todos sus sentidos, y este Tribunal abundando en esa opinión, se ha negado a extender la regla mediante interpretación judicial o a excluir testimonio que no caiga claramente dentro de los términos del estatuto. *Boscio* v. *Vilá*, supra, y casos en él citados. Igual crítica ha sufrido dicha regla en otras jurisdicciones donde se han adoptado estatutos similares al nuestro.

El de Texas, por ejemplo, es igual al nuestro.(5)

Allá como aquí, los tribunales se han negado a extender la regla mediante interpretación judicial o a excluir testimonio que no caiga claramente dentro del estatuto. Véanse *Simon* v. *Middleton*, 112 S.W. 441 y *Dodson* v. *Watson*, 225 S. W. 586. Sin embargo en el caso de *Hupp* v. *Hupp*, 235 S.W.2d 753, resuelto en diciembre de 1950, se aplicó la regla a una situación de hechos similar a la del caso de

---

(5) El estatuto de Texas lee como sigue:

"En las demandas por o en contra de los albaceas testamentarios, administradores o tutores en las cuales pueda dictarse sentencia a favor o en contra de ellos como tales, ninguna de las partes podrá declarar contra la otra en lo referente a transacciones con, o relaciones hechas por el testador, intestado o pupilo, a menos que fuere llamado a declarar por la parte contraria; y las prescripciones de esta Sección se aplicarán a todas las demandas por o en contra de los herederos y representantes legales de un finado, que se suscitaren de transacciones habidas con éste." (Vernon's *Texas Civil Statutes*, Art. 3716.)

autos. Resumimos los hechos de aquel caso en la siguiente forma:

"Ann Hupp instituyó pleito contra Fred Hupp, en su carácter personal y como administrador de la herencia de T. R. Hupp, finado, y contra otros solicitando sentencia a su favor sobre la mitad del valor de la propiedad del finado, bajo la teoría de que la demandante tenía derecho a ello como la esposa putativa del finado, o, en la alternativa, bajo la teoría de que ella y el finado acumularon la propiedad en una comunidad o empresa común. La Corte de Distrito del Condado de Wichita, por voz del Juez Temple Shell, dictó sentencia a favor de la demandante y los demandados apelaron. La Corte de Apelaciones Civiles, por voz del Juez Presidente McDonald, sostuvo que la admisión del testimonio de la demandante en cuanto a transacciones con el finado constituía un error que daba lugar a la revocación."

Discutiendo los fundamentos expuestos por la allí apelada en favor de la admisión de su testimonio sobre las transacciones habidas entre ella y su marido putativo, el Tribunal de Apelaciones se expresó así, a la página 755:

"Primero, ella alega que estaba demandando por su propio derecho e interés individual como esposa putativa, o como comunera, sobre propiedad cuyo título pertenecía a ella y no al finado o sus herederos. Esta contención no considera el hecho de que los demandados disputaron la reclamación de que la propiedad en litigio pertenecía a la demandante, ya como la esposa putativa sobreviviente o ya como comunera. El caso cae dentro del estatuto debido al hecho de que la demandante demandó al administrador y a los herederos del finado, como tales, y que la sentencia se dictaría por o en contra de ellos como tales. Es verdad que la sentencia no se dictaría por o en contra de la demandante como una heredera o como una representante del finado, dentro del significado del estatuto, pero la sentencia se dictaría por o en contra de los demandados en la capacidad que dice el estatuto. Recientemente tuvimos ante nos un problema similar en el caso de *Higgs* v. *Farmer*, Tex. Civ. App., 234 S.W.2d 1021."

Aplicando el mismo razonamiento a este caso concluímos que el tribunal inferior no cometió el error que le imputa la apelante.

■ Hemos leído cuidadosamente la transcripción de evidencia y de ella surge que las conclusiones de hecho del tribunal inferior están ampliamente sostenidas por la prueba. El hecho de que la demandante viviera en concubinato con Lorenzo Martinó hasta la fecha de la muerte de éste, ocurrida en agosto de 1946, no le da derecho a participar en los bienes dejados por éste. La participación de la mujer en bienes adquiridos durante su relación concubinaria debe fundarse siempre en el convenio celebrado entre los concubinos y, en ausencia de convenio, en la labor y el esfuerzo por ella realizados para adquirirlos. *Pérez* v. *Cruz*, 70 D.P.R. 933 y *Torres* v. *Roldán*, 67 D.P.R. 367. El tribunal inferior concluyó que no se había probado que existiera tal convenio entre la demandante y su concubino, ni que ella hubiera contribuído con determinados bienes, capital o trabajo en la adquisición de los dejados por Lorenzo Martinó.

*Debe confirmarse la sentencia apelada.*

Los Jueces Presidente Señor Todd, Jr., y Asociado Señor Ortiz, no intervinieron.