BANCO DE AHORRO DEL OESTE, demandante-peticionario, *v.* VÍCTOR SANTOS CINTRÓN y su esposa, MYRNA LOUBRIEL, demandados-recurridos.

Número: O-81-242    Resuelto: 2 de febrero de 1982

*Ferrer & Alcaraz,* abogados de los peticionarios; *Hugo Arana Torrós,* abogado de la recurrida Myrna Loubriel. El recurrido Víctor Santos Cintrón no compareció.

EL JUEZ PRESIDENTE SEÑOR TRÍAS MONGE emitió la opinión del Tribunal.

El 29 de noviembre de 1977 los entonces esposos, Víctor Santos Cintrón y Myrna Loubriel, suscribieron un pagaré no hipotecario a favor del Banco de Ahorro del Oeste ("el Banco") para garantizar un préstamo de $2,280.

El 5 de enero de 1978 el señor Santos Cintrón suscribió un segundo pagaré por la suma de $6,000, esta vez sin el consentimiento de la esposa.

El 12 de febrero de 1979 el señor Santos Cintrón tomó un tercer préstamo del Banco por la suma de $2,280. El Banco no le requirió tampoco esta vez al prestatario la firma de la señora Loubriel, de quien el señor Santos estaba separado para entonces y se divorciaría luego. El prestatario utilizó $906.13 de esta suma para saldar el primer préstamo y retuvo el balance.

A las pocas semanas de contraer esta última deuda el señor Santos cesó de efectuar abono alguno a los préstamos pendientes y el Banco declaró vencidos los pagarés. El Banco demandó tanto al señor Santos como a la señora Loubriel, ya divorciada.

La señora Loubriel señaló en su contestación que los pagarés representativos de la deuda, los últimos dos, se otorgaron sin su consentimiento; que ella no se benefició de ese dinero; y que entre las razones de su divorcio se contó

la alegada realización de actos fraudulentos por su ex-esposo en perjuicio de ella.

El Tribunal de Distrito resolvió que la señora Loubriel respondía solidariamente tan solo por la suma de $906.13 y que el señor Santos debía satisfacer al Banco la suma de $7,426.55 de sus propios bienes. El Banco apeló al Tribunal Superior sobre la base de que los actos unilaterales del señor Santos obligaron a su entonces esposa. El Tribunal Superior confirmó la sentencia del Tribunal de Distrito. El Banco acudió en alzada ante nosotros. Expedimos auto de *certiorari*.

El Art. 1308 del Código Civil, 31 L.P.R.A. sec. 3661, según enmendado por la Ley Núm. 51 de 21 de mayo de 1976, dispone:

Serán de cargo de la sociedad de gananciales:

1. Todas las deudas y obligaciones contraídas durante el matrimonio por cualquiera de los cónyuges.

.      .      .      .      .      .      .      .

6. Los préstamos personales en que incurra cualquiera de los cónyuges. (1)

El Art. 1313 (31 L.P.R.A. sec 3672), según enmendado por la referida Ley Núm. 51, ordena en parte:

No obstante lo dispuesto en la sec. 284[2] de este título, ninguno de los dos podrá donar, enajenar, ni obligar a título

---

(1) El Art. 1308 proveía originalmente:

"Serán de cargo de la sociedad de gananciales:

"1. Todas las deudas y obligaciones contraídas durante el matrimonio por el marido, y también las que contrajere la mujer en los casos en que pueda legalmente obligar a la sociedad."

El Art. 1308 no contenía anteriormente el actual inciso 6.

(2) La Sec. 284 a que se hace referencia corresponde al Art. 91 del Código Civil, también enmendado por la Ley Núm. 51, el cual expone:

"Ambos cónyuges serán los administradores de los bienes de la sociedad conyugal, salvo estipulación en contrario, en cuyo caso uno de los cónyuges otorgará mandato para que el otro actúe como administrador de la sociedad.

"Las compras que con dichos bienes haga cualquiera de los cónyuges serán

oneroso, los bienes muebles e immuebles de la sociedad de gananciales, sin el consentimiento escrito del otro cónyuge, excepto las cosas destinadas al uso de la familia o personales de acuerdo con la posición social o económica de ambos cónyuges.

Todo acto de disposición o administración que sobre dichos bienes haga cualquiera de los cónyuges en contravención a esta sección, y los demás dispuestos en este título, no perjudicará [sic] al otro cónyuge ni a sus herederos. [3]

▇▇▇ No existe ahora, como no existía antes de la Ley Núm. 51, contradicción entre los Arts. 1308 y 1313. El primero trata básicamente de actos de obligación; el segundo, de actos de disposición. J. Puig Brutau, *Fundamentos de Derecho Civil*, Barcelona, Ed. Bosch, 1967, T. IV, Vol. 1, pág. 689 y ss. Cualquiera de los cónyuges puede, como regla general, efectuar en Puerto Rico actos de obligación con cargo a la sociedad de gananciales sin el consentimiento del otro.[4] El nuevo inciso 6 del Art. 1308 aclara que entre esos actos de obligación se cuentan los préstamos personales.

No sólo el claro texto del Art. 1308 abona esa conclusión, sino también el historial legislativo de la Ley Núm. 51. En su segundo informe, de 6 de mayo de 1975, la

---

válidas cuando se refieran a cosas destinadas al uso de la familia o personales de acuerdo con la posición social y económica de ésta. Disponiéndose que cualquiera de los cónyuges podrá efectuar dichas compras en efectivo o a crédito.

"Los bienes inmuebles de la sociedad conyugal no podrán ser enajenados o gravados, bajo pena de nulidad, sino mediante el consentimiento escrito de ambos cónyuges. Nada de lo antes dispuesto se interpretará a los efectos de limitar la libertad de los futuros cónyuges de otorgar capitulaciones matrimoniales."

[3] El texto anterior del Art. 1313 afirmaba:

"Sin embargo de las facultades que tiene el marido como administrador, no podrá donar, enajenar y obligar a título oneroso, los bienes inmuebles de la sociedad de gananciales, sin el consentimiento expreso de la mujer.

"Toda enajenación o convenio que sobre dichos bienes haga el marido en contravención a esta sección, y las demás dispuestas en este título o en fraude de la mujer, será nulo y no perjudicará a ésta ni a sus herederos."

[4] En este caso no se discuten las reglas pertinentes a los actos de administración a que se refiere el Art. 91 del Código Civil.

Comisión de lo Jurídico Civil de la Cámara afirmó:

> La medida a su vez faculta a ambos cónyuges a coger préstamos personales sin el consentimiento del otro, obligando dicho préstamo a la sociedad legal.

Este concepto se repite en el curso del debate ante la Cámara. Véase el pasaje reproducido en el escolio 5 de *Padró Collado* v. *Espada*, 111 D.P.R. 56 (1981).

Lo anterior no significa que todos los préstamos personales en que incurra un cónyuge obligan a la sociedad de gananciales. Estamos interpretando un código y no una ley aislada. El Art. 1308 es tan solo parte de un vasto cuerpo jurídico, armónicamente dispuesto. La norma que enuncia está sujeta a la masa doctrinal de ese cuerpo. De ahí que en España el marido puede generalmente tomar a préstamo sin el consentimiento de la esposa, pero no puede obligar a la sociedad de gananciales con ánimo de perjudicar a la mujer. La mujer siempre tiene la facultad de dejar sin efecto no sólo los actos fraudulentos del marido, sino los realizados con el ánimo de perjudicarla. Manresa, *Comentarios al Código Civil Español*, 6ta ed., Madrid, Ed. Reus, 1969, T. IX, pág. 785 y ss.

Numerosos comentaristas comparten la opinión de Manresa. Castán, por ejemplo, señala que la generalidad del Art. 1408 del Código Civil español, equivalente en esencia a la versión original del 1308 nuestro, queda limitada por el principio de que solo obligan a la sociedad de gananciales las deudas contraídas en interés de la familia. J. Castán Tobeñas, *Derecho civil español, común y foral*, 9na ed., Madrid, Ed. Reus, 1976, T. V, Vol. 1, pág. 375. Véanse, además, F. Puig Peña, *Compendio de Derecho Civil Español*, 3ra ed., Madrid, Ed. Pirámide, 1976, T. V, págs. 162–163; E. Vaz Ferreira, *Tratado de la Sociedad Conyugal*, 2da ed., Montevideo, 1963, T. 2, págs. 19–22; J. A. Doral, *El fraude y la defensa del interés familiar en el Código Civil*, 58 Rev. Der. Priv. 555 (1974); J. Lacruz Berdejo y F. de A. Sancho Rebullida, *Derecho de Familia*,

3ra ed., Barcelona, Ed. Bosch, 1978, T. 1, pág. 238 y ss. El principio enunciado es de antigua estirpe. En la Ley V, Tít. IV, Libro X de la Novísima Recopilación, que se hacía eco del Fuero Real y de las Leyes del Estilo sobre los extremos que cubre, luego de reconocer la facultad del marido de enajenar los bienes consorciales sin el consentimiento de la mujer, se afirmaba que "el contrato de enagenamiento vala, salvo si fuere probado que se hizo cautelosamente por defraudar ó damnificar á la muger".

En varios otros países civilistas se reconoce también la doctrina del provecho común o la de la ausencia de fraude como limitación al carácter ganancial de una deuda. J. Fernandes Rodrigues, *Direito da Família*, 1977, T. II, pág. 101 y ss.; G. Cornu, *Les Régimes Matrimoniaux*, 2da ed., París, Presses Universitaires de France, 1977, pág. 346; G. Pescatore y C. Ruperto, *Codice Civile*, 7ma ed., 1978, Arts. 189, 192, págs. 143–144; *Leyes y Códigos de México: Código Civil*, 9na ed., Méjico, Ed. Porrúa, 1963, Arts. 175 y 194, págs. 78, 81.

La norma de que la sociedad de gananciales no responde de las deudas contraídas por el marido con el fin de perjudicar a la mujer rige desde hace muchas décadas en Puerto Rico. Al interpretar el entonces Art. 1323 del Código Civil, equivalente al actual 1308 en su versión anterior a la Ley Núm. 51, afirmamos en *Vivaldi* v. *Mariani et al.*, 10 D.P.R. 444, 448 (1906):

> Desde luego, que cuando de la prueba resultase que el marido ha pretendido hacer uso de las facultades que se le confieren sobre los bienes de la sociedad de gananciales, y de sus obligaciones para con ellos prescritas en la sección 1323 del Código Civil con el objeto de perjudicar ó exponer á algún riesgo los derechos de la esposa, la corte deberá intervenir, impidiendo la perpetración de tal fraude, y hará caso omiso y abrogará toda obligación así contraída por el marido en fraude de los derechos de la esposa, como también en cualquiera otro contrato ó traspaso fraudulento.

La Ley Núm. 51 no ha alterado esta doctrina. Su propósito, según se expresa en el segundo informe de la Comisión de lo Jurídico Civil de la Cámara, es "equiparar jurídicamente a la mujer respecto del hombre en las relaciones económicas dentro de la institución del matrimonio". La Ley Núm. 51 no despoja a la mujer de la protección tradicional que gozaba contra actos administrativos, obligacionales o dispositivos realizados con ánimo de perjudicarla. Por el contrario, al sustituirse el antiguo sistema de administración unitaria marital por uno de administración dual o diárquica, se extiende por fuerza esa protección a ambos cónyuges. En *Aguilú* v. *Sociedad de Gananciales*, 106 D.P.R. 652, 656 (1977), expresamos así nuestra continuada preocupación por actos de dilapidación del capital ganancial:

> Mal se llevaría a cabo la filosofía moderna de igualdad si so color de llamarse acto de administración se dejara a cualquiera de los cónyuges adquirir bienes inmuebles para la sociedad a riesgo de dilapidar el capital ganancial.

La señora presidenta y la señora asesora de la Comisión de lo Jurídico Civil de la Cámara para el tiempo de la adopción de la Ley Núm. 51 han analizado así la intención legislativa sobre este extremo:

> . . . la intención legislativa va primordialmente encaminada a proteger a uno de los cónyuges de la mala administración y la dilapidación del caudal conyugal por parte del otro y por ende, evitar el fraude y el intento deliverado [*sic*] de sustraer bienes pertenencientes [*sic*] al caudal ganancial. O. Cruz Jiménez de Nigaglioni y M. Hosta de Guzmán, *La nueva legislación que rige la sociedad legal de gananciales*, 37 Rev. C. Abo. P.R. 701, 705 (1976).

Resolvemos en consecuencia que serán de cargo de la sociedad de gananciales los préstamos personales incurridos durante el matrimonio por cualquiera de los cónyuges, mas no los tomados para el propio beneficio del prestatario, los no encaminados a servir el interés de la

familia o los efectuados con el ánimo de perjudicar o defraudar al otro cónyuge.(5) La carga de la prueba reposa inicialmente en el cónyuge que niega su responsabilidad o la de la sociedad de gananciales. Manresa, *op. cit.*, T. IX, pág. 740. La carga puede invertirse con facilidad. Si la porción correspondiente de los bienes consorciales del cónyuge objetor, por ejemplo, queda afectada o si tal cónyuge demuestra prima facie no haber recibido beneficio alguno de la obligación contraída, entre otros casos, se invierte la prueba.

En el pleito presente la señora Loubriel alegó que no se benefició de los préstamos objetados. Con toda posibilidad se desfiló prueba sobre éste y otros extremos análogos, mas no se hicieron determinaciones de hecho sobre el particular. Debe devolverse el caso a instancia a tales fines.

▪ Los valores en conflicto en este caso son básicamente el interés en igualar al hombre y la mujer en los aspectos concernidos y el interés en la seguridad y facilidad del tráfico comercial. En la práctica, ya el segundo interés le ha cedido la primacía al primero, sin trastornos. Como regla general, se requiere la firma de ambos cónyuges en los préstamos personales. J. Ramos de Sánchez Vilella, *La mujer y la nueva legislación sobre derechos de familia*, Comisión para el Mejoramiento de los Derechos de la Mujer, San Juan, 1977, págs. 28–29. Tal es también la situación en España e Italia. Puig Brutau, *op. cit.*, T. IV, Vol. 1, pág. 698; A. y M. Finocchiaro, *Riforma del Diritto di Famiglia*, Milán, Ed. Giuffrè, 1979, Vol. III, n. 25, págs. 537–538. Las normas reafirmadas en este caso le hacen justicia a la mujer, conforme al mandato constitucional y legislativo, sin lesionar usos de otra índole.

*Se devolverá el caso a instancia para procedimientos ulteriores conformes con esta opinión.*

---

(5) Se habrá advertido que el nuevo Art. 1313 del Código Civil eliminó la frase "en fraude de la mujer". El efecto de esta eliminación, si alguno, no tiene que analizarse aquí, ya que lo que estamos interpretando son los actos obligacionales de que trata el Art. 1308.