GENEROSA RODRÍGUEZ RODRÍGUEZ y VICTORIA CARDONA NAZARIO, demandantes y recurrente la primera, *v.* DAVID MORENO RODRÍGUEZ, demandado y recurrido; WILFREDO MORENO CARDONA, interventor.

*Número:* RE-91-468       *Resuelto:* 30 de marzo de 1994

624

*Raúl Barreras Morales* y *Rafael Rodríguez Guasp*, abogados de la recurrente; *Máximo Ruiz Jiménez*, abogado del recurrido.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

Mediante recurso de revisión comparece Generosa Rodríguez Rodríguez para solicitar que modifiquemos el por ciento de participación adjudicado por el Tribunal Superior a la comunidad de bienes formada por ella y el demandado durante el período en que sostuvieron una relación consensual. El Tribunal Superior concluyó que la deman-

dante sólo era acreedora al cincuenta por ciento (50%) de la participación del demandado en dicha comunidad.

Sin embargo, este Tribunal carece de jurisdicción por la ausencia de parte indispensable, a tenor con lo dispuesto en la Regla 16.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III. Veamos.

## I

El 14 de abril de 1939 el demandado David Moreno Rodríguez y la demandante Victoria Cardona Nazario contrajeron matrimonio en Puerto Rico bajo el régimen de la sociedad legal de gananciales. Diez (10) años después tuvieron su primer hijo, al que llamaron Wilfredo Moreno Cardona, quien solicita la intervención en este caso. En 1951 el matrimonio decidió vender todas sus propiedades y se trasladaron al estado de Nueva York.

Una vez allí, David Moreno comenzó a trabajar como empleado de una fábrica de embarque y, posteriormente, con la ayuda de un socio, adquirió una carnicería y por su propia cuenta un negocio de vegetales, y se dedicó a prestar dinero con intereses. Por su parte, Victoria Cardona trabajaba en la industria de la aguja y realizaba trabajos de costura. Según fue determinado por el tribunal de instancia, ambos administraban las finanzas del hogar. Sentencia, pág. 3.

Entre 1956 y 1960 David Moreno estableció un apartamento separado de la residencia que todavía compartía con Victoria Cardona. En dicho apartamento comenzó a tener relaciones amorosas con distintas mujeres. Fue para 1960 cuando conoció a la demandante, Generosa Rodríguez Rodríguez, con quien congenió inmediatamente. Generosa Rodríguez estaba casada con César Cruz, quien no es parte en este pleito y con quien procreó tres (3) hijos.

En 1963 David Moreno decidió regresar a Puerto Rico cargando con doscientos mil dólares ($200,000) producto de

la venta de los dos (2) negocios pertenecientes a la sociedad legal de gananciales y del negocio de préstamos. Unos meses después, Generosa Rodríguez se trasladó a Puerto Rico y ambos comenzaron a vivir como marido y mujer. David Moreno organizó aquí una corporación llamada Davidson of Puerto Rico, a los fines de establecer un motel. El tribunal de instancia determinó que todo el capital corporativo había sido aportado por el demandado. Este negocio se desarrolló rápidamente.

Ahora bien, en 1972 Victoria Cardona se divorció de David Moreno. Por su parte, Generosa Rodríguez se divorció de César Cruz al año siguiente. Posteriormente, Generosa Rodríguez y David Moreno contrajeron nupcias en 1977. Este último matrimonio fue disuelto en 1986. Han sido consolidados los casos de liquidación de la sociedad legal de gananciales entre David Moreno y Victoria Cardona y Generosa Rodríguez, respectivamente.

El tribunal de instancia determinó que entre 1963 a 1977 existió entre David Moreno y Generosa Rodríguez "una relación humana afectiva y económica indicativa de un pacto implícito para aportar bienes, esfuerzo y trabajo para el beneficio común. Véase *Caraballo Ramírez* v. *Acosta*, 104 D.P.R. 494 (1975)". Sentencia, pág. 18. Sin embargo, rechazó dar efecto completo a la decisión de *Caraballo Ramírez*, supra, entendiendo que —luego de nuestros pronunciamientos en *Banco de Ahorro del Oeste v. Santos*, 112 D.P.R. 70 (1982), y en *WRC Props., Inc. v. Santana*, 116 D.P.R. 127 (1985)— David Moreno no podía obligar de manera unilateral a la sociedad legal de gananciales a estar en comunidad con Generosa Rodríguez, debido a que esta relación no era en beneficio de la familia. Concluye que aun cuando David Moreno y Victoria Cardona se divorciaron en 1972, lo cierto era que desde 1963 hasta ese momento existía entre ellos una comunidad de bienes. Por lo tanto, determinó que Generosa Rodríguez sólo era acreedora al 50% de la participación de David Moreno en dicha comunidad.

En cuanto a César Cruz, ex esposo de Generosa Rodríguez, concluyó que no tenía derecho alguno.[1]

Mediante recurso de revisión, Generosa Rodríguez nos solicita que revoquemos al tribunal de instancia en cuanto a los por cientos adjudicados a la recurrente.

## II

Luego de un examen de los hechos del caso de autos y a la luz de las relaciones obligacionales que se configuran en éstos, concluimos que es necesario que se acumule como parte indispensable al Sr. César Cruz.

■ La Regla 16.1 de Procedimiento Civil de 1979, *supra*, dispone:

> Las personas que tuvieren un interés común sin cuya presencia no pueda adjudicarse la controversia, se harán partes y se acumularán como demandantes o demandadas según corresponda. Cuando una persona que deba unirse como demandante rehusare hacerlo, podrá unirse como demandada.

■ Una parte indispensable es aquella que podría ver afectados sus derechos e intereses al momento de dictarse la sentencia o resolución por no encontrarse presente en el litigio. Véanse: *Pueblo v. Henneman*, 61 D.P.R. 189, 194 (1942); *Fuentes v. Tribl. de Distrito*, 73 D.P.R. 959, 981 (1952). La regla persigue que la persona que no esté presente quede protegida de los efectos legales de la sentencia y así evitar la multiplicación innecesaria de pleitos. Véanse: *Granados v. Rodríguez Estrada I*, 124 D.P.R. 1 (1989); *Hernández Agosto v. Romero Barceló*, 112 D.P.R. 407, 412–413 (1982); *Hernández Agosto v. López Nieves*, 114 D.P.R. 601, 604–605 (1983); *Pérez Ríos v. Hull Dobbs*, 107 D.P.R. 834, 841 (1978). Así se evita que la persona

---

[1] El tribunal de instancia señaló: "[d]esde luego, la misma regla opera a la inversa. Es decir, el esposo ... no tiene derecho alguno a participar de las resultas del pacto implícito que su cónyuge hizo con Moreno durante el tiempo que estuvo casada con él". Sentencia, pág. 20 esc. 6

pueda quedar privada de su propiedad sin un debido proceso de ley. Art. II, Sec. 7, Const. E.L.A., L.P.R.A., Tomo 1. Su finalidad procesal propende a que el remedio adjudicado sea más completo. *Cepeda Torres v. García Ortiz*, 132 D.P.R. 698 (1993).

■ En diversas situaciones hemos exigido la acumulación de una parte indispensable. En el caso de la sociedad legal de gananciales, hemos sostenido la necesidad de la inclusión de ambos cónyuges como parte indispensable cuando "en acciones que afecten el patrimonio de la sociedad de gananciales obviando el riesgo de nulidad, ante la posibilidad de que la defensa del interés social por uno solo no se ejercite con la debida eficiencia, o la existencia de incompatibilidad entre los cónyuges respecto a la defensa de su interés dentro de una sociedad que ambos gobiernan con igual autoridad". *Alicea Álvarez v. Valle Bello*, 111 D.P.R. 847, 854 (1982). Es mejor práctica emplazar a ambos. *Pauneto v. Núñez*, 115 D.P.R. 591, 594 (1984).

■ Recientemente resolvimos que, aun cuando estén casados bajo el régimen económico de capitulaciones matrimoniales y se solicite tomar en consideración los ingresos de ambos para fijar la pensión alimentaria de un hijo no común, es necesaria la inclusión de ambos cónyuges en el pleito. *Cepeda Torres v. García Ortiz*, supra.

■ Ahora bien, también hemos exigido, cuando una concubina presenta un pleito solicitando la disolución y liquidación de la comunidad de bienes habida entre ella y un hombre casado, que se acumule como parte indispensable a la esposa de este último. *Carrero Suárez v. Sánchez López*, 103 D.P.R. 77 (1974). Allí dijimos que "[l]a acción civil de la concubina promoviendo la liquidación de una comunidad de bienes con un hombre legalmente casado aun cuando incluya al marido como única parte demandada, necesariamente afecta y somete el interés de la esposa en la sociedad de gananciales cuando según ocurre en este caso la

comunidad y la sociedad conyugal han coexistido en apreciable contemporaneidad". Íd., págs. 80–81.

## III

En el caso de autos es un hecho probado que durante los primeros nueve (9) años de la relación concubinaria habida entre David Moreno y Generosa Rodríguez ambos estaban casados con otras personas. Específicamente, entre 1963 y 1973 Generosa permaneció casada con César Cruz, por lo que éste tiene interés en la cuantía e intereses que en su día podría recibir Generosa Rodríguez con respecto a los nueve (9) años en que ésta, aún casada, mantuvo una relación de concubinato con Moreno. Véanse: *Suárez v. Sánchez López*, supra; Art. 1326 del Código Civil, 31 L.P.R.A. sec. 3701.[2]

El hecho de que César Cruz conociera la relación de concubinato al divorciarse y aun así aceptara la alegada inexistencia de bienes gananciales, no es óbice para que se le considere parte indispensable en este pleito. No nos corresponde en esta etapa adjudicar la posible renuncia de César Cruz a su derecho. Tratándose de una defensa afirmativa que admite excepciones, las partes interesadas en este pleito son las que podrían plantear la defensa de cosa juzgada (Regla 6.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III) y el tribunal de instancia. Con el beneficio de la comparecencia del señor Cruz, decidiría si procede o no la defensa.

Sería incorrecto en esta etapa de los procedimientos, sin haber dado oportunidad al señor César Cruz para expre-

---

[2] El caso de autos es claramente distinguible del caso *Caraballo Ramírez v. Acosta*, 104 D.P.R. 494 (1975). En *Caraballo Ramírez* la concubina era soltera y los bienes que generaba eran propios. En el caso de marras, Rodríguez era la concubina de un hombre casado pero, a diferencia de los hechos en *Caraballo Ramírez*, Rodríguez estaba casada. Los bienes que generaba a través de los años mediante su trabajo y esfuerzo con Moreno no eran propios. Esos bienes eran gananciales y pertenecían a la sociedad legal de bienes gananciales constituida entre Rodríguez y César Cruz, la cual fue disuelta por divorcio en 1973.

sarse, resolver que debido a aquella aparente renuncia el señor Cruz está impedido de reclamar cualquier interés que en derecho tenga sobre los bienes gananciales generados por Generosa durante los nueve (9) años que estuvieron casados y ésta mantuvo un concubinato con Moreno. Sin duda, la acumulación como parte indispensable del señor Cruz es necesaria para la resolución de esta controversia. Por ende, *procede revocar el dictamen recurrido.*

*Se dictará la sentencia correspondiente.*

El Juez Asociado Señor Rebollo López emitió un voto de conformidad. El Juez Asociado Señor Negrón García emitió una opinión disidente. Los Jueces Asociados Señores Alonso Alonso y Fuster Berlingeri no intervinieron.

– O –

Opinión de conformidad emitida por el Juez Asociado Señor Rebollo López.

I

Entendemos, al igual que se expone en la opinión mayoritaria emitida por el Tribunal, *que en el presente caso hay ausencia de parte indispensable,* conforme a lo pautado por la Regla 16.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III; ello en vista de que existe una parte cuyos derechos e intereses podrían ser *adversamente afectados* por el dictamen judicial que resulte jurídicamente procedente en el caso. *Pueblo v. Henneman,* 61 D.P.R. 189, 194 (1942); *Pérez Ríos v. Hull Dobbs,* 107 D.P.R. 834, 841 (1978); *Hernández Agosto v. Romero Barceló,* 112 D.P.R. 407, 412–413 (1982); *Hernández Agosto v. López Nieves,* 114 D.P.R. 601, 604–605 (1983); *Cepeda Torres v. García Ortiz,* 132 D.P.R. 698 (1993).

Es *imprescindible* que se incluya al Sr. César Cruz como parte en el pleito de epígrafe. Éste fue cónyuge de la Sra. Generosa Rodríguez Rodríguez hasta 1973; esto es, durante los últimos diez (10) años en que estuvo vigente esa sociedad legal de gananciales ya su cónyuge sostenía una relación concubinaria con Moreno Rodríguez. Ciertamente el señor Cruz posee interés en el dinero que pudiera, en su día, recibir su ex cónyuge —*por concepto de una remuneración proporcional al trabajo que ella realizara durante dicho período de tiempo*— en el pleito de división de bienes con el Sr. David Moreno Rodríguez.

## II

En vista de la correcta disposición que se hace del recurso, resulta innecesario hacer cualquier otro pronunciamiento. Ello no obstante, por razón de que en la opinión disidente se adelantan, *a destiempo*, unos pronunciamientos —respecto a cómo deben liquidarse los bienes de una comunidad de bienes habida en un caso como el de marras— *entendemos procedente expresarnos al respecto*. No podemos perder de perspectiva que los derechos que pretende reconocerle la opinión de mayoría a una de las partes —Generosa Rodríguez Rodríguez— *nacen no tan sólo de una relación que es contraria a las disposiciones del Código Civil referentes a los derechos y las obligaciones que existen entre marido y mujer sino de una relación que, además, constituye conducta punible bajo nuestro ordenamiento jurídico-penal*. Véanse: Art. 129 del Código Penal, 33 L.P.R.A. sec. 4147; *Ortiz De Jesús v. Vázquez Cotto*, 119 D.P.R. 547 (1987).

Somos del criterio que ante una relación de esta naturaleza, *no* debe reconocerse pacto expreso o implícito alguno, *Cruz v. Sucn. Landrau Díaz*, 97 D.P.R. 578 (1969); *Caraballo Ramírez v. Acosta*, 104 D.P.R. 494 (1975); ello en vista de que conforme al Art. 1207 del Código Civil, 31

L.P.R.A. sec. 3372, los contratantes podrán establecer los pactos, cláusulas y condiciones que tengan por conveniente *siempre que éstos no sean contrarios a la ley, a la moral ni al orden público.* En *Hernández v. Méndez & Assoc. Dev. Corp.,* 105 D.P.R. 149, 153 (1976), definimos *orden público* como

> ... *el conjunto de valores eminentes que guían la existencia y bienestar de una sociedad.* El concepto orden público recoge y ampara un interés social dominante por su trascendencia, por el número de personas que afecta y por la valía de los derechos que tiende a proteger. *Wiley* v. *Livingston,* 376 U.S. 543, 549–50 (1964). En gran medida el orden público *es acopio de normas de moral y de ética pública que en ocasiones alcanzan su exposición en ley,* pero que aun sin esa expresa declaración legislativa, *constituyen principios rectores* de sabio gobierno nacidos de la civilización y fortalecidos por la cultura, la costumbre, por la manera de ser, *en fin por el estilo de una sociedad.* (Énfasis suplido.)[1]

Premiar a la Sra. Generosa Rodríguez, reconociendo la existencia de una comunidad de bienes entre ésta y la sociedad legal de gananciales Moreno-Cardona, *constituye, a nuestra manera de ver las cosas, una recompensa a aquel que actúa de forma ilegal e inmoral; determinación judicial que resulta extraña y contraria a los principios que desde tiempos inmemoriales rigen la sociedad puertorriqueña. Rechazamos enérgicamente dicha actuación.* Ello no obstante, entendemos procedente *compensar* a la señora Rodríguez Rodríguez *por el justo valor de su trabajo* durante el período anterior a que contrajera matrimonio con Moreno Rodríguez; *ello en ánimo de evitar un enriquecimiento injusto.* Véanse: *Ortiz Andújar v. E.L.A.,* 122 D.P.R. 817 (1988); *Morales v. Municipio de Toa Baja,* 119 D.P.R. 682 (1987); *Plan Bienestar Salud v. Alcalde Cabo Rojo,* 114 D.P.R. 697 (1983).

---

[1] Véase, además, *Casiano, Jr. v. Borintex Mfg. Corp.,* 133 D.P.R. 127 (1993).

## – O –

Opinión disidente del Juez Asociado Señor Negrón García.

"[Q]uiérase o no, al amparo y como consecuencia de esas uniones imperfectas, pueden surgir situaciones y estados que un sentimiento noble no rechaza y que una más justa política legislativa no puede silenciar." F. Puig Peña, *Las uniones maritales de hecho*, 33 Rev. Der. Priv. 1086 (1949).

## I

En 1939 David Moreno Rodríguez contrajo matrimonio con Victoria Cardona Nazario bajo el régimen de la sociedad legal de gananciales. En 1949 nació su único hijo, Wilfredo Moreno Cardona. En 1951 el matrimonio Moreno-Cardona decidió establecerse en la ciudad de Nueva York. Allí Moreno Rodríguez comenzó a trabajar y a ahorrar dinero, que utilizó para adquirir varios negocios; ella trabajaba en la industria de la aguja, cosía en el hogar y administraba conjuntamente con su esposo las finanzas del hogar y de los negocios.

Entre 1956 y 1960, el demandado mantuvo su hogar con Victoria. Sin embargo, estableció un "apartamiento de soltero" debido a que para esa fecha había comenzado a mantener relaciones extramatrimoniales con otras mujeres. Para 1960 Moreno se había separado de su esposa. Precisamente durante ese año Moreno Rodríguez conoció a Generosa Rodríguez Rodríguez, quien era casada. Comenzaron relaciones extramaritales, aunque continuaron viviendo en hogares distintos. En 1963 Moreno Rodríguez decidió regresar a Puerto Rico y establecer un motel. Por tal motivo vendió todos los negocios que poseía en Nueva York y se trasladó a la isla, trayendo consigo aproximadamente doscientos mil dólares ($200,000). Al poco tiempo adquirió un negocio en Isla Verde. Generosa Rodríguez, embarazada como resultado de su relación extramarital

con Moreno Rodríguez, vino más tarde durante ese año a reunirse con él. De inmediato comenzó a ayudarlo en sus gestiones para establecer el negocio y, además, atendía el hogar que compartían. Entre tanto, Moreno Rodríguez continuaba sus esfuerzos de establecer un motel. A tales efectos, ese mismo año organizó una corporación doméstica —Davidson of Puerto Rico, Inc.— la cual adquirió terrenos en los que se inició la construcción del motel. Todo se financió con el dinero que trajo de Nueva York. En 1964 comenzó la operación del motel. Desde el principio, Generosa Rodríguez participó y colaboró intensamente en su operación y administración. El motel continuó creciendo, pues parte de las ganancias fueron utilizadas para financiar la construcción de más cabañas; para 1984 contaba con cincuenta y ocho (58) cabañas. Además, adquirieron varios inmuebles con las ganancias generadas por el motel.

En 1972 Moreno se divorció de su esposa Victoria Cardona Nazario, mientras que Generosa Rodríguez obtuvo su divorcio en 1973.([1]) Finalmente, en 1977 se unieron en ma-

---

([1]) El primer esposo de Generosa, César Cruz, no fue acumulado como parte en el presente pleito, debido a que no es parte indispensable. Regla 16.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III. No existe impedimento para adjudicar el caso.

Se ha dicho que "no existe una fórmula prescrita para determinar en cada caso si una persona o corporación es una parte indispensable o no". J.A. Cuevas Segarra, *Práctica Procesal Puertorriqueña, Procedimiento Civil*, San Juan, Pubs. J.T.S., 1986, Vol. II, pág. 91, citando a *Niles-Bennet Co. v. Iron Moulders Union*, 254 U.S. 77 (1920). Véase, además, *Hernández Agosto v. López Nieves*, 114 D.P.R. 601 (1983); *Alicea Álvarez v. Valle Bello*, 111 D.P.R. 847, 852 (1982); *Carrero Suárez v. Sánchez López*, 103 D.P.R. 77 (1974).

No resolvemos en el vacío. Es de notar que Cruz conocía de la relación existente entre su entonces esposa Generosa y David desde sus inicios. De hecho, debido a estas relaciones en Nueva York se le privó temporeramente de la custodia de sus hijos (Determinación de Hecho Núm. 13). Estando, pues, consciente de esta situación, Cruz se divorció de Generosa el 5 de abril de 1973 (Determinación de Hecho Núm. 26) en el caso Civil Núm. RF-73-1761. El tribunal de instancia tomó conocimiento de esa sentencia. En dicho proceso Cruz aceptó bajo juramento los hechos alegados en la demanda; en su tercera alegación exponía que durante el matrimonio *las partes no habían obtenido bienes pertenecientes a la sociedad legal de gananciales*. Quedó, pues, disuelta y liquidada dicha sociedad.

Obviamente, cualquier reclamación de Cruz tendría que estar predicada exclusivamente en su posible participación en la extinta sociedad legal de gananciales que una vez formó con Generosa, su disolución y liquidación, y su aceptación de que no se habían acumulado bienes le priva de cualquier interés en el presente pleito.

trimonio y vivieron juntos hasta 1984, cuando Moreno Ro-dríguez abandonó el hogar.

En 1986 se decretó el divorcio entre Generosa Rodríguez y Moreno Rodríguez. Se estipuló que él satisfaría: (a) dos mil dólares ($2,000) mensuales como pensión alimentaria; (b) tres mil dólares ($3,000) mensuales como adelanto de la participación de ella en la sociedad legal de gananciales; (c) cincuenta mil dólares ($50,000) por concepto de adelanto de participación ganancial; (d) cuatro mil quinientos dóla-res ($4,500) adicionales como adelanto de participación ganancial. Por último, a Generosa Rodríguez se le obligó a pagar la suma de quince mil dólares ($15,000) por concepto de dos (2) préstamos gananciales.

Así las cosas, el 14 de enero de 1987 Generosa Rodrí-guez presentó en el Tribunal Superior, Sala de Carolina, una demanda en la que solicitó la liquidación de la comu-nidad de bienes y la posterior sociedad legal de gananciales *Moreno-Rodríguez*. Por su parte, la primera esposa de Mo-reno Rodríguez —Victoria Cardona Nazario— el 3 de abril de 1987 pidió la división de la sociedad legal de ganancia-les *Moreno-Cardona*. Ambas acciones fueron consolidadas.

Previa vista en su fondo, dicho foro (Hon. Carmen Rita Vélez Borrás, Juez) dictó sentencia el 31 de julio de 1991. Conforme a *Caraballo Ramírez v. Acosta*, 104 D.P.R. 494 (1975), concluyó que "en el período comprendido entre el 1963 y el 1977 existió entre Generosa y David Moreno una relación humana, afectiva y económica indicativa de un pacto implícito para aportar bienes, esfuerzo y trabajo para el beneficio común". Sentencia, pág. 18. No obstante, dis-tribuyó los bienes objeto del pleito utilizando criterios dis-tintos:

> ... en el momento en que el Tribunal Supremo adjudicó el caso de *Caraballo Ramírez* pasó por alto —tal vez porque las partes en aquel pleito no lo plantearon— el hecho de que un esposo como en este caso no puede obligar unilateralmente los bienes de la Sociedad Legal de Gananciales que él coadministra me-diante un pacto —implícito o expreso— para compartir ingre-

sos y gastos que él realice con otra mujer que no sea su cónyuge. Sentencia, pág. 18.

A juicio suyo, dicho aspecto jurídico no fue aclarado hasta las decisiones de *Banco de Ahorro del Oeste v. Santos*, 112 D.P.R. 70 (1982), y *WRC Props., Inc. v. Santana*, 116 D.P.R. 127 (1985). Bajo ese razonamiento, concluyó que la participación de Generosa Rodríguez en los bienes producidos durante el período en que mantuvo la relación consensual con Moreno Rodríguez debía limitarse al 50% de la participación ganancial de su compañero y no al 50% del total de los bienes producidos.

De esta determinación Generosa Rodríguez acudió a este Foro.([2]) Acordamos revisar.

## II

Por estar estrechamente relacionados, procedemos a discutir juntos los primeros dos errores.

Podemos fundir estos errores en la interrogante siguiente: establecer la participación del concubino en los bienes adquiridos por los integrantes de la relación extramarital, la comunidad resultante de esa participación: ¿es entre la sociedad legal de gananciales (Moreno-Cardona) a la cual pertenece uno de los participantes en la relación

---

([2]) Los errores fueron los siguientes:

"Primer Error: Erró el Tribunal de Instancia al dictar sentencia adjudicándole a esta parte compareciente tan solo una participación equivalente al 25% en la comunidad de bienes existente entre la demandante recurrida Victoria Cardona Nazario, el demandado David Moreno, y la aquí demandante recurrente, Generosa Rodríguez Rodríguez.

"Segundo Error: Erró el Tribunal de Instancia al declarar sin lugar la moción de reconsideración radicada por esta parte compareciente.

"Tercer Error: Erró el Tribunal de Instancia al no incluir como parte de los bienes de la comunidad de bienes los ingresos generados por el Motel El Río desde el año 1986 hasta el presente.

"Cuarto Error: Erró el Tribunal de Instancia al valorar el Motel El Río de acuerdo a una tasación deficiente del año 1988, no valorando el mismo de acuerdo a su valor real y actual." Solicitud de revisión, pág. 5.

Estimamos que el tercer y cuarto error *no* se cometieron.

extramarital y su concubino o el cónyuge de uno de los concubinos y los participantes en la relación extramarital?

Nuestra doctrina sobre comunidad de bienes concubinarios fue expuesta en *Caraballo Ramírez v. Acosta*, supra, en la cual recogimos la casuística previa de *Cruz v. Sucn. Landrau Díaz*, 97 D.P.R. 578 (1969); *Danz v. Suau*, 82 D.P.R. 609 (1961); *Pereles v. Martinó*, 73 D.P.R. 848 (1952); *Pérez v. Cruz*, 70 D.P.R. 933 (1950), y *Torres v. Roldán*, 67 D.P.R. 367 (1947). Sus principios han sido reiterados posteriormente en *Ortiz De Jesús v. Vázquez Cotto*, 119 D.P.R. 547 (1987).

En *Caraballo Ramírez v. Acosta*, supra, págs. 481–482, dijimos:

> ... la concubina puede probar la existencia de una comunidad de bienes, sea porque así se hubiese convenido expresamente o sea porque la conducta de las partes —la relación humana y económica entre ellos— demuestra que se obligaron implícitamente a aportar, y aportó cada uno bienes, esfuerzo y trabajo para beneficio común. En defecto de probar dicho pacto èxpreso o implícito, es decir, que no se pruebe la existencia de la comunidad de bienes, la concubina podría probar que aportó bienes, valores y servicios, que estos produjeron ganancias, y como un acto justiciero para evitar el enriquecimiento injusto de la otra parte, reclamar el valor de dichos valores y servicios y sus correspondientes ganancias.

Dicha comunidad se crea entre la sociedad legal de gananciales de la cual es miembro uno de los participantes en relación extraconyugal y su concubino.[3] No puede ser de otra manera. Nos explicamos.

Si al inicio de una relación extraconyugal uno de los participantes es casado, los esfuerzos e inversiones económicas que realice en comunidad con su concubino, presuntamente los hará en calidad de administrador (o coadministrador a partir de 1976) de la sociedad legal de

---

[3] Esta determinación sólo establece quiénes son las partes en dicha comunidad y no la participación de las partes en ésta. Esta participación ha de estar sujeta a prueba.

gananciales de la cual aún es miembro. Este cónyuge integra dicha sociedad mientras no se haya disuelto el matrimonio. Art. 1315 del Código Civil, 31 L.P.R.A. sec. 3681. Ahora bien, como señaló el ilustrado tribunal de instancia, aunque la sociedad legal de gananciales se disuelve cuando la sentencia de divorcio adviene firme, "ello no produce la liquidación automática de los bienes de la referida entidad". Sentencia, pág. 21. Los ex cónyuges pasan a formar una comunidad de bienes, la cual nace, según el Art. 326 del Código Civil, "cuando la propiedad de una cosa o de un derecho pertenece pro indiviso a varias personas". 31 L.P.R.A. sec. 1271. Consúltese, además, *Calvo Mangas v. Aragonés Jiménez*, 115 D.P.R. 219 (1984). De manera, pues, que la persona casada al entrar en la comunidad de esfuerzos con su concubino para adquirir bienes, lo hace a nombre de la sociedad legal de gananciales o de la comunidad a la cual pertenece. De hecho, la casuística invocada por el tribunal sentenciador para apoyar la distribución de los bienes concubinarios de forma distinta a lo dispuesto en *Caraballo Ramírez v. Acosta*, supra, confirma la potestad de coadministrador que tienen los componentes de una sociedad legal de gananciales.([4]) Esto, sin embargo, no tiene por qué afectar los derechos del concubino que, de ser soltero, estaría aportando a la comunidad sus propios bienes y esfuerzos.([5])

---

([4]) En *Banco de Ahorro del Oeste v. Santos*, 112 D.P.R. 70, 74 (1982), dijimos:

"Cualquiera de los cónyuges puede, como regla general, efectuar en Puerto Rico actos de obligación con cargos a la sociedad de gananciales sin el consentimiento del otro."

Asimismo, el Art. 91 del Código Civil, 31 L.P.R.A. sec. 284, dispone: "Ambos cónyuges serán los administradores de los bienes de la sociedad conyugal. ..." Véase, además, *WRC Props., Inc. v. Santana*, 116 D.P.R. 127, 136 (1985).

Estos casos, no obstante, confirman la excepción a la regla aquí enunciada, que postula:

"La norma de que la sociedad de gananciales no responde de las deudas contraídas por el marido con el fin de perjudicar a la mujer rige desde hace muchas décadas en Puerto Rico." *Banco de Ahorro del Oeste v. Santos*, supra, pág. 76.

([5]) Así, por ejemplo, si dos (2) personas, "A" y "B", entran en una comunidad de bienes y cada uno aporta una unidad de esfuerzos, "B" no debe ser afectado en su derecho a la mitad de los frutos de dicho esfuerzo por el hecho de que "A" forma parte

Bajo esta óptica, fue correcta la determinación de que entre David Moreno y Genoveva Rodríguez existió una relación humana indicativa de un pacto implícito de establecer una comunidad de bienes. La solución más justa y correcta en derecho es que los frutos netos de la comunidad Moreno-Rodríguez se dividan entre Generosa de una parte y la comunidad resultante de la sociedad legal de gananciales Moreno-Cardona.([6])

El derecho es un instrumento para los seres humanos. Debemos reconocer que nada de lo que aquí digamos cambiará el hecho de que Moreno aportó bienes y esfuerzos (gananciales) en conjunto con los esfuerzos de Generosa a una empresa comercial común. Se ha dicho "[a]ntes de nada, lo primero que ha de constatarse es que las relaciones patrimoniales entre compañeros —quiérase o no tener en cuenta jurídicamente— existen y además son inevitables". E. Estrada Alonso, *Las uniones extramatrimoniales en el Derecho Civil español*, Madrid, Ed. Civitas, 1986, pág. 164. Ante esta innegable realidad, sin poder retroceder en el tiempo, réstanos tomarla en cuenta y aplicar las normas jurídicas más justas y adecuadas a la situación.

Distinto al resultado llegado por el ilustrado tribunal sentenciador, el análisis de los casos de *Banco de Ahorro del Oeste v. Santos*, supra, y *WRC Props., Inc. v. Santana*, supra, en conjunción con *Caraballo Ramírez v. Acosta*, supra, refleja que sus pronunciamientos no pueden tener el efecto de negar la existencia de unos esfuerzos comunes realizados por dos (2) personas, *independientemente de su*

---

de una sociedad legal de gananciales.

([6]) Según hemos expresado, lo que hacemos hoy es determinar cuáles son las partes que componen este tipo de comunidad y no la participación que en los bienes pueda tener cada una de dichas partes. Reiteramos que la participación que corresponda a cada uno será objeto de prueba.

Mas, sin embargo, si se admite la tesis del tribunal de instancia de que una de las dos (2) partes en la comunidad es la esposa de David Moreno y que, en consecuencia, le corresponde una participación de un 50% en ésta, habría que admitir la posibilidad de que el esposo de Generosa Rodríguez también podría reclamar un 50% de participación en la comunidad, quedando David Moreno y Generosa Rodríguez sin participación alguna.

*relación en el plano afectivo.* Ni el Art. 1308 como tampoco el Art. 1313 del Código Civil, 31 L.P.R.A. secs. 3661 y 3672, crean impedimento alguno para que cualquier beneficio que Moreno haya obtenido de esa empresa beneficie la sociedad legal de gananciales Moreno-Cardona, a la cual pertenecía. De hecho, el Art. 1313 del Código Civil, *supra*, expresamente prohíbe que se *perjudique* la sociedad por ese tipo de conducta o acciones, pero no que la beneficie. *Quetglas v. Carazo*, 134 D.P.R. 644 (1993). Precisamente los casos antes aludidos confirman este axioma. No contienen expresiones que puedan estimarse limitativas de la facultad de un cónyuge de beneficiarse de las ganancias derivadas de los actos unilaterales de administración o disposición del otro cónyuge. En cuanto a las deudas resultantes de esos actos, sin embargo, dispone que sólo serán de cargo de la sociedad si sirven a un interés familiar y no están predicadas en un ánimo fraudulento u oculto de perjudicar al otro cónyuge. Véase *WRC Props., Inc. v. Santana*, supra, pág. 135.

La justicia intrínseca de esta norma es evidente. Aplica al caso de autos, y en vista de que la situación distribuye unos beneficios resultantes de los actos unilaterales de uno de los cónyuges, y no la atribución de deudas u obligaciones, los casos mencionados no son óbice a la norma expresada.([7])

Una última aclaración sobre las normas para fijar la participación de las partes en los bienes a ser distribuidos. Según *Caraballo Ramírez v. Acosta*, supra, pág. 483, una vez se determina que se constituyó la comunidad de bienes, por acuerdo implícito, se debe recurrir "al articulado

---

([7]) De igual modo, cualquier perjuicio que se hubiese causado a la participación de Victoria en la comunidad de bienes Moreno-Cardona posterior a la reforma de 1976, podría generar un crédito a su favor toda vez que desde esa fecha Moreno ya no era el administrador, sino coadministrador de dicha comunidad, por lo que había cesado su facultad de obligarla unilateralmente.

del Código Civil que *define y regula* esta institución". Su Art. 326, *supra*, dispone:

> Hay comunidad cuando la propiedad de una cosa o de un derecho pertenece pro indiviso a varias personas.
> A falta de contratos o disposiciones especiales, se regirá la comunidad por las prescripciones de las secs. 1271 a 1285 de este título.

Y el Art. 327 del Código Civil, 31 L.P.R.A. sec. 1272, establece el *método* a ser utilizado en la determinación de la porción de los partícipes en la comunidad, en ausencia de pacto expreso:

> El concurso de los partícipes, tanto en los beneficios como en las cargas, será proporcionado a sus respectivas cuotas.
> Se presumirán iguales, mientras no se pruebe lo contrario, las porciones correspondientes a los partícipes en la comunidad.

Procede esta aclaración, pues el tribunal a quo estimó iguales la aportación de esfuerzo de Moreno Rodríguez y Generosa Rodríguez a la comunidad. Tal determinación tiene apoyo en la prueba. Sólo quedaba determinar el valor de la aportación *inicial* hecha a esa comunidad del dinero perteneciente a la sociedad legal de gananciales *Moreno-Cardona* para poder proceder con la división de los bienes.[8]

_____

[8] En cuanto a la división, véase el Art. 340 del Código Civil, 31 L.P.R.A. sec. 1285.