Miranda De Hostos, Juez Ponente
*1466 TEXTO COMPLETO DE LA SENTENCIA
Se recurre de una sentencia emitida julio de 1995 por el Tribunal de Primera Instancia, Sala Superior de San Juan, en la cual se ordena la liquidación de los bienes gananciales habidos entre las partes de epígrafe.
Inconforme con el dictamen la parte apelante Enrique Ferreiro Mena presenta recurso de apelación donde señala la comisión de doce (12) errores en los que alegadamente incidió el tribunal de instancia los cuales a continuación se resumen.
Los primeros tres errores se refieren a que el tribunal de instancia violó el debido proceso de ley de la parte apelante al comenzar la vista en su ausencia y la de su representante legal; al determinar que la parte apelante no había presentado prueba para sostener su posición; y al decidir la controversia sin examinar la prueba que ellos presentaron.
Del cuarto al octavo error la parte apelante señala que se celebró la vista por el tribunal de instancia sin que el comisionado especial designado rindiera su informe final el cual era indispensable por ser una controversia complicada y que no se celebró una conferencia con antelación al juicio como lo disponen las Reglas de Procedimiento Civil.
En cuanto a los errores noveno al duodécimo, se resumen a que incidió el tribunal de instancia en la reclasificación que hizo de algunos bienes como gananciales siendo privativos y las deudas que a éstos afectaban, y sobre la determinación de la pensión alimenticia.
Luego de evaluados los documentos que obran en autos, los alegatos presentados y la transcripción de la prueba, procedemos a confirmar la sentencia dictada por los siguientes fundamentos.
I
Los hechos que se presentan ante nuestra consideración son los siguientes.
La parte apelante contrajo matrimonio con la parte apelada Winifred Cobb Gorbea el 10 de septiembre de 1960.
Para el 12 de julio de 1985 se decretó su divorcio por consentimiento mutuo. Durante el tiempo que permanecieron casados adquirieron una serie de bienes gananciales los cuales por acuerdo entre las partes seguiría administrando la parte apelante hasta efectuada la división de la comunidad.
Con fecha de 5 de febrero de 1986 el tribunal de instancia nombró un co-administrador para que en conjunto con la parte apelante siguieran la marcha de los negocios de los ex-cónyuges. Posteriormente se dejó sin efecto el nombramiento del co-administrador y se anunció se nombraría un comisionado ante el cual se ventilarían en primer lugar todos los asuntos del pleito. Luego de varios trámites procesales en los que intervino el comisionado especial, para el 31 de enero de 1989 el único bien inmueble que quedaba como bien ganancial era un condominio ubicado en el Viejo San Juan, según lo *1467 expresó el contador partidor encargado.
El 20 de febrero de 1991 la parte apelante solicitó que se señalara una vista con antelación al juicio para examinar la prueba y determinar la fecha para la vista final del caso. Para el mes de mayo de 1994 el comisionado somete su renuncia por motivos de salud.
El 13 de febrero de 1995 se celebró una conferencia sobre el estado del caso y se señaló la vista en su fondo para los días 20 y 21 de abril de 1995. Surge de la minuta levantada el día de la vista, que previo a la llegada de la parte apelante y sus representantes legales, el comisionado se había dirigido al tribunal, entregó ciertas joyas y se aceptó su renuncia. La parte apelante alega que la parte apelada presentó su prueba testifical y documental en su ausencia y no se le concedió tiempo para contrainterrogar la misma.
El tribunal de instancia emitió sentencia donde dispuso sobre la liquidación de bienes gananciales el día 26 de julio de 1995.
Conforme los hechos antes esbozados analicemos la controversia planteada por la parte apelante.
II
Los primeros tres errores contienen básicamente alegaciones similares dirigidas a demostrar que la sala sentenciadora privó a la parte apelante de su derecho al debido proceso de ley, al comenzar el juicio sin estar presente y sin haber comparecido sus representantes legales privándosele de su derecho a contrainterrogar la prueba testifical presentada en su contra.
En la minuta del 13 de febrero de 1995 consta que las partes fueron debidamente citadas a la vista en su fondo para los días 20 y 21 de abril a las 9:00 A.M. y 10:00 A.M. respectivamente. Alega la representación de la parte apelante que precisamente desde esa fecha habían informado al tribunal que tenían un compromiso para el día 20 de abril de 1995 por lo que solicitaba que la vista comenzara a las 10:00 de la mañana y que-por un error de transcripción en la minuta no se cambió la hora según su petición. Cuando comparecen finalmente el día de la vista la parte apelante y su representación legal ya se había excusado al comisionado y se había comenzado el desfile de la prueba de la parte apelada.
Nuestro más alto foro ha pronunciado que el derecho al debido proceso de ley no es un molde riguroso que se da en el abstracto, pues su naturaleza es eminentemente circunstancial y pragmática. Pueblo v. Andréu González, 105 D.P.R. 315, 320 (1976); Domínguez Talavera v. Tribunal Superior, 102 D.P.R. 423, 428 (1974).
Si bien es cierto que el derecho constitucional al debido proceso de ley exige la concesión de vista, el derecho a ser oído, presentar prueba y confrontar a los testigos, el mismo no priva a los tribunales de su discreción para controlar los procesos ante sí, siempre que se le garanticen tales derechos a las partes concernientes. Feliciano Figueroa v. Toste Piñero, opinión de 15 de diciembre de 1993, 93 J.T.S. 161, pág. 11364; Rivera Rodríguez v. Stowell Taylor, opinión de 30 de junio de 1993, 93 J.T.S. 111, pág. 10931; Rodríguez v. Tribunal Superior, 104 D.P.R. 335, 340 (1975).
Se ha resuelto que el derecho a contrainterrogar es uno de primer orden y que privar a una parte del mismo puede constituir una violación del debido proceso de ley. Pueblo v. Torres Nieves, 105 D.P.R. 340, 351 (1976); Pueblo v. Pacheco Padilla, 92 D.P.R. 894, 897 1965).
Del análisis de los documentos presentados por las partes, queda evidenciado que el juez de instancia esperó cerca de media hora por la representación legal de la parte apelante antes de comenzar el juicio, según había sido pautado. El tribunal de instancia le brindó a la representación legal de la parte apelante durante el receso de medio día, la oportunidad de escuchar la grabación de lo acaecido en la vista en su ausencia, para que estuvieran en posición de realizar el contrainterrogatorio efectivamente, pero ésta prefirió no ejercer su derecho.
En el caso de autos, el tribunal no privó o impidió a la parte apelante de su derecho a contrainterrogar efectivamente a los testigos que declararon en su ausencia. El hecho de que se haya comenzado el juicio en ausencia de la parte apelante y su representante legal, bajo las circunstancias *1468 particulares de este caso no constituye un defecto sustancial de sus derechos, ya que el tribunal de instancia tomó medidas posteriores para subsanar el mismo y garantizarle los derechos a dicha parte. Alicea Alvarez v. Valle Bello, Inc., 111 D.P.R. 847, 853 (1982).
Con respecto a que el tribunal de instancia incidió al no examinar y evaluar la prueba presentada por la parte apelante, entendemos que no le asiste la razón. En la minuta del 20 de abril de 1995 en las págs. 2 y 3, se detalla claramente la prueba documental que la parte apelante presentó durante la vista y que fue admitida por el tribunal. Surge de la transcripción que el juez sentenciador le garantizó el derecho a la parte apelante de presentar su pmeba durante la vista, antes de dar por sometido el caso. 
De la evaluación del expediente en su totalidad y la sentencia dictada podemos concluir que el tribunal de instancia consideró toda la prueba que tuvo ante su consideración antes de emitir su dictamen, por lo cual dicho error no fue cometido. En nuestra jurisdicción se presume la corrección de los procedimientos llevados a cabo por el tribunal de instancia y el que así lo cuestione en apelación, no puede descansar en meras alegaciones o conclusiones para controvertir dicha presunción. Cortés Piñeiro v. Sucn. A. Cortés, 83 D.P.R. 685, (1961); Pueblo v. Prieto Maysonet, 103 D.P.R. 102, 107 (1974).
III
Los errores cuarto, quinto, sexto, séptimo y octavo por estar relacionados serán discutidos en conjunto.
En síntesis alega la parte apelante que el tribunal de instancia erró al prescindir del informe final preparado por el comisionado especial asignado al caso y al entrar a dilucidar la vista, sin tan siquiera haber celebrado una vista con antelación al juicio como disponen las Reglas de Procedimiento Civil. Entendemos que dichos errores no fueron cometidos por las siguientes razones.
La Regla 41 de Procedimiento Civil, 32 L.P.R.A. Ap. III, gobierna lo concerniente a cuándo pueden ser nombrados los comisionados especiales y cuáles son sus poderes y facultades. Sobre este particular la Regla 41.1 de dicho cuerpo legal establece que "[e]l tribunal en que estuviere pendiente un pleito o procedimiento podrá nombrar un comisionado especial en relación con dicho pleito o procedimiento..."
Señala la propia regla que la encomienda de un asunto a un comisionado es la excepción y que " [njo se encomendará el caso a un comisionado en ningún pleito, salvo cuando estén envueltas las cuestiones sobre cuentas y cómputos difíciles de daños, o casos que envuelvan cuestiones sumamente técnicas o de un conocimiento pericial altamente especializado". Regla 41.2 de Procedimiento Civil; Cestero v. Pérez de Jesús, 104 D.P.R. 891, 893 (1976). "[L]a encomienda hecha al comisionado especial debe ser clara, y sus poderes deben quedar inequívocamente expresados en la orden o resolución que lo designa". Meléndez v. Levitt & Sons of P. R., 104 D.P.R. 895, 903 (1976).
La orden puede especificar o limitar sus poderes, requerirle que informe sobre determinadas cuestiones litigiosas, que haga determinados actos o que se limite a recibir prueba y transmitir el récord de ésta. Lo importante es dejar claro que el comisionado es un recurso que sirve como auxiliar del tribunal pero es el juez quien decide y dicta la sentencia final del caso. Meléndez v. Levitt & Sons of P.R. supra, págs. 903-904. (Subrayado nuestro.)
Como parte de las tareas inherentes del comisionado especial, el mismo debe preparar un informe orientado a cumplir la encomienda que previamente el tribunal le impuso. Sobre el particular nuestro más alto foro ha expresado que "[e]n caso de que un asunto sea debidamente encomendado a un comisionado, el informe que éste rinde no es final (excepto por estipulación de las partes). El tribunal después de oír a las partes, podrá adoptar el informe, o modificarlo o rechazarlo en todo o en parte, o recibir evidencia adicional, o devolverlo con instrucciones.” Vélez Ruiz v. E.L.A., 111 D.P.R. 752, 757 (1981). (Enfasis suplido.) En ausencia de demostración de prejuicio, parcialidad o error manifiesto de parte del comisionado especial al apreciar la prueba, no se alterarán las determinaciones de hecho que éste haya sostenido por la prueba testifical y documental ante él presentada. In Re: Soto López, opinión de 5 de abril de 1994, 94 J.T.S. 45, pág. 11746; In Re: Colton Fontán, opinión de 21 *1469 de febrero de 1991, 91 J.T.S. 24, pág. 8423.
Los hechos establecen que el 30 de septiembre de 1986, se nombró por el tribunal de instancia al ¡ Ledo. Luis G. Estades como comisionado especial para que atendiera los asuntos relacionados con el 1 caso. El mismo renunció a su encomienda el 27 de mayo de 1994. Por motivo de este hecho, la parte apelada radicó una moción el 20 de diciembre de 1994 solicitando el señalamiento de una conferencia para fijar los trámites judiciales para la resolución de los asuntos pendientes. El tribunal celebró una conferencia el 13 de febrero de 1995 y señaló la vista en su fondo del caso. í
La parte apelante en dicha conferencia no se opuso a la renuncia del comisionado, ni radicó j moción alguna para que éste rindiera un informe final en esa etapa del procedimiento.
De otra parte, en la conferencia se le brindó oportunidad a la representación legal de la parte apelante para hablar con el comisionado, sin embargo éste nunca informó sobre su interés de contrainterrogarlo para la vista.
Ante tales circunstancias concluimos que la parte apelante conocía que se estaba prescindiendo del comisionado y de su informe final para el juicio en su fondo, y no presentó oposición al respecto.
En cuanto a la alegación de que no se obtuvo el beneficio del informe final preparado por el comisionado cuando comenzó el juicio, debemos señalar que el error no fue cometido. El tribunal en el descargo de su responsabilidad no estaba obligado a limitarse a la información que pudiera presentar el comisionado, pues tenía amplia discreción para incluso rechazar lo vertido por éste. La . decisión final del caso sería tomada por el tribunal según la prueba que tuviera ante sí y no por el comisionado, por lo cual dicho error no fue cometido.
Sobre el error de no celebrar una conferencia preliminar al juicio, es menester señalar que la Regla 37 de Procedimiento Civil, va dirigida a "[s]implificar, reducir y hasta evitar el juicio, si posible, mediante la eliminación de las cuestiones litigiosas, la promoción de estipulaciones-entre las partes, j así como de admisiones y la utilización de otros recursos disponibles a las partes y al tribunal." ■ Cuevas Segarra, José, Práctica Procesal Puertorriqueña, Publicaciones JTS, 1979, pág. 196. Sin ¡ embargo, celebrar esta conferencia no siempre es necesario puesto que hay veces en que llevarla a | cabo retrasaría aún más los procedimientos.
En este caso el tribunal de instancia no estimó necesario la presentación del informe final ni la celebración de la vista con antelación al juicio y procedió en el pleno ejercicio de sus facultades a continuar los procedimientos, de la manera más justa, rápida y económica para las partes. 
IV
Los últimos cuatro errores señalados por la parte apelante por estar relacionados entre sí serán discutidos en conjunto.
La parte apelante trae ante nuestra consideración varios planteamientos relacionados con la determinación del carácter ganancial o privativo de varios bienes habidos entre ellos y con respecto a la responsabilidad de ambos padres frente a las pensiones alimenticias que deben ser sufragadas.
En primer lugar sostiene la parte apelante que el sostenimiento de los hijos es parte integral de la responsabilidad de ambos cónyuges y que sería injusto que uno sólo de los ex-cónyuges tuviera la obligación de haber mantenido a los hijos desde el divorcio hasta la fecha en que se liquida la sociedad de gananciales, circunstancia que según su posición reflejó su situación real.
El Código Civil impone la obligación de alimentar los hijos no emancipados tanto al padre como a la madre y también dispone que cuando recaiga entre dos o más personas la obligación de dar alimentos, se repartirá entre ellos el pago de la pensión en cantidad proporcionada a su caudal respectivo. 31 L.P.R.A. sees. 504 y 601. Sosa Rodríguez v. Rivas Sariego, 105 D.P.R. 518, 521 (1976), Guzmán Vega v. Piñero Piñero, 91 D.P.R. 704, 706 (1965).
Nuestro Tribunal Supremo ha resuelto que al liquidar la sociedad de gananciales, un cónyuge *1470 puede reclamar contra el otro obligado, pero sólo por los pagos en exceso de la pensión acordada o fijada por el tribunal. Mundo v. Cervoni, 115 D.P.R. 422, 424 (1984).
En el caso de autos surge de las estipulaciones adoptadas como parte de la sentencia de divorcio, que la parte apelante pagaría la cantidad de $1,500.00 mensuales por concepto de la pensión alimenticia de sus cuatro hijas, la cual fue posteriormente reducida a $750.00. Ese dinero se le entregaría a la parte apelada quien administraría la misma y mantendría la custodia de las niñas. Concluimos que la parte apelante no puede exigir un crédito por la mitad de la cantidad pagada de la pensión alimenticia fijada por la sentencia de divorcio, por ser ésta una obligación que le corresponde satisfacer exclusivamente. Por otro lado, tampoco quedó demostrado que la parte apelada haya incurrido en gastos extraordinarios que genere un crédito en su contra, por lo cual dicho error no fue cometido. Guadalupe Viera v. Morell, 115 D.P.R. 4, 15 (1983).
Con respecto a la alegación de que las garantías firmadas por la parte apelante para garantizar préstamos comerciales hechos a los negocios gananciales de los ex-cónyuges son deudas gananciales, la parte apelante tampoco tiene razón en sus contenciones. Como norma general el Artículo 1308 del Código Civil, 31 L.P.R.A. see. 3661, establece que todas las deudas o préstamos contraídas durante el matrimonio por cualquiera de los cónyuges se presumen gananciales.
Un cónyuge que no haya participado en la transacción, podría controvertir la presunción de ganancialidad probando que el préstamo se tomó para defraudarlo o para que sirviera al beneficio exclusivo del cónyuge que lo tomó y no para propósitos de la familia. Quetglas Alvarez v. Carazo Castillo, opinión de 18 de noviembre de 1993, 93 J.T.S. 146, pág. 11269; Banco de Ahorro del Oeste v. Santos, 112 D.P.R. 70, 77-78 (1982). La presunción antes aducida no significa que la sociedad de gananciales es deudora solidaria de lo que deba cada cónyuge aunque bajo ciertas circunstancias sí respondería subsidiariamente. Pauneto v. Núñez, 115 D.P.R. 591, 957 (1984).
En el presente caso la parte apelante no presentó prueba de que la parte apelada consintió o tenía conocimiento de que él realizó tales transacciones y mucho menos pudo demostrar que la parte apelada o su familia se beneficiaron de dichos préstamos, por lo cual la sala sentenciadora resolvió correctamente al concluir que dichas deudas eran privativas del apelante.
Sobre el carácter ganancial o privativo de las comisiones recibidas por la parte apelante por concepto de la venta de relojes Rado, señalaremos lo siguiente:
En el acuerdo suplementario luego del divorcio firmado por las partes, se le concedía a la parte apelante la administración de todos los negocios de la sociedad hasta su eventual liquidación. La parte apelante mientras estuvo casado con la parte apelada fue nombrado representante de ventas en Puerto Rico de la Rado Watch Co. con derecho a recibir 10% de comisión por las ventas que realizara. Alega la parte apelante que él era un empleado de la compañía antes mencionada y las comisiones ganadas luego del divorcio eran privativas, por lo que podía disponer de ellas exclusivamente. La parte apelada por su parte, entiende que por ser la representación de Rado un derecho propietario de la sociedad de gananciales, a ella le corresponde la mitad de las comisiones correspondientes a los años 1985 y 1986.
Nuestro Código Civil al enumerar las categorías de bienes gananciales claramente deja establecido que son gananciales todos los bienes que se obtengan por "[l]a industria, sueldo o trabajo de cualquiera de los cónyuges." Art. 1301, 31 L.P.R.A. see. 3641. En Puerto Rico existe una presunción de que todos los bienes que se adquieran después de casados son gananciales y el que reclama que son privativos tiene el peso de la prueba en contrario. Méndez v. Ruiz Rivera, 124 D.P.R. 579, 589 (1989), 31 L.P.R.A. see. 3647.
Conviene destacar que además de comisionista de la Rado, la parte apelante obtuvo un contrato de representación de servicios para un negocio de la sociedad de gananciales dedicado a ofrecer servicios de relojería. Posteriormente, Rado priva a la parte apelante de esta representación exclusiva y dicha parte presenta una demanda, incluyendo a la parte apelada como parte indispensable de la causa de acción. Este caso fue transigido según lo confirma una moción de sentencia por transacción, donde se detallan las partidas correspondientes a los desembolsos y créditos hechos por la compañía.
De los autos no podemos concluir que la parte apelante haya refutado cabalmente la presunción de *1471 ganancialidad de las comisiones, sino que por el contrario lo que se sostiene es que la representación de Rado era un derecho propietario de la sociedad de gananciales. Por lo cual resolvemos que la parte apelada como codueña de dicho negocio ganancial de ventas de productos de Rado Watch Co., está en pleno derecho de hacer dicha reclamación por ser parte de los bienes de la sociedad de gananciales.
Por último, en cuanto a la participación mensual que tenía la parte apelada según el acuerdo suplementario luego del divorcio, debemos señalar lo siguiente. Del acuerdo suplementario sometido por las partes surge que la parte apelante se comprometió a pagar $2,000.00 mensuales como parte del producto de las utilidades de los negocios pertenecientes a la sociedad de gananciales. Aduce dicha parte que los negocios dejaron de producir utilidades y no podía seguir pagando ese dinero.
No obstante, se desprende de los autos que se consignaron rentas del condominio ubicado en el Viejo San Juan, de la venta de la residencia de Guaynabo y una suma por transacciones referentes al negocio de venta de relojes que pertenecía a las partes, según el acuerdo suplementario antes mencionado. Por tanto, no incidió el tribunal de instancia al señalar un crédito a favor de la parte apelada por la cantidad que se le adeuda de esas cuantías.
V
En nuestra función apelativa en ausencia de pasión, prejuicio o parcialidad de parte del foro de instancia en la apreciación de la prueba que tuvo ante sí, nos abstenemos de cambiar su dictamen por la deferencia que merece como juzgador de los hechos de esta causa de acción. Monllor Arzola v. Sociedad Legal de Gananciales, opinión de 13 de junio de 1995., 95 J.T.S. 77, pág. 963; Rivera Pérez v. Cruz Corchado, 119 D.P.R. 8, 14 (1987).
VI
Por los anteriores fundamentos confirmamos la sentencia sobre liquidación de bienes gananciales dictada por el Tribunal de Primera Instancia, Sala Superior de San Juan.
Lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Sonia Pacheco Román
Secretaria General
ESCOLIOS 96DTA39
1. De la transcripción de la vista podemos concluir que el período de presentación de la prueba en ausencia de la parte apelante fue corto y sobre materias generales de la controversia. (T.E., págs. 12 a 32.)
2. Cabe el señalar que la parte apelante no pudo presentar unos cheques porque se habían expedido hacía tiempo, aún cuando tuvo nueve (9) años desde la presentación de la demanda para localizarlos. Sobre esta prueba es que el tribunal se expresa en su sentencia. (T.E., págs. 104 y 109-110.)
3. Como cuestión de hecho este pleito llevaba nueve (9) años desde su presentación en el tribunal de instancia y el juez que finalmente lo tuvo bajo su consideración, tenía una genuina preocupación por resolver el mismo.