CARIBBEAN PRODUCE EXCHANGE, INC.
Demandante-Peticionario

v.

PEDRO A. LUCENA LÓPEZ; JANE DOE ESPOSA DE NOMBRE DESCONOCIDO
Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS
Demandados-Recurridos

Núm. KLCE-05-00716

San Juan, Puerto Rico, a 14 de diciembre de 2005

Panel integrado por su Presidenta, la Juez Peñagarícano Soler,
y los Jueces González Vargas y Sepúlveda Santiago

Sepúlveda Santiago, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Comparece Caribbean Produce Exchange, Inc. (la peticionaria) y nos solicita que revisemos la Resolución emitida el 28 de marzo de 2005, por el Tribunal de Primera Instancia (TPI), Sala Superior de San Juan, sobre cobro de dinero. La demanda fue instada por la parte peticionaria de epígrafe contra el Sr. Pedro A. Lucena López, su esposa la Sra. Lilly Ivette Ramos y la Sociedad Legal de Gananciales compuesta por ambos (los recurridos).

La Sra. Lilly Ramos solicitó reconsideración de la sentencia en rebeldía dictada contra la Sociedad Legal de Gananciales compuesta por ambos, debido a que la Sociedad de Gananciales había contestado la demanda conforme a derecho. El Tribunal *a quo* declaró ha lugar la solicitud de reconsideración, desestimó la demanda y declaró ilegal el embargo.

Luego de haber examinado el expediente, los anejos y analizar los escritos que ambas partes nos han presentado, revocamos la Resolución emitida por el Tribunal de Primera Instancia.

### I

Por ser de importancia las fechas y los trámites procesales para la consideración del caso de marras, pasaremos a discutirlos en detalle. La Sra. Ramos instó, el 12 de enero de 1999, una demanda de divorcio por trato cruel contra su esposo, el Sr. Pedro Lucena López. Por otro lado, Caribbean Produce Exchange presentó demanda en Cobro de Dinero contra Pedro A. Lucena López, Jane Doe, esposa de nombre desconocido y la Sociedad Legal de Gananciales compuesta por ambos el 10 de julio de 2000. En el referido documento le reclamó la suma de $37,755.48, además de las costas, gastos, desembolsos y un 25% por concepto de honorarios de abogado pactados. El dinero adeudado fue utilizado para adquirir mercancía para un negocio de distribución de productos de comedores escolares, pertenecientes a la Sociedad Legal de Gananciales en los años 1998 a 1999. Entre tanto, el TPI dictó sentencia de divorcio el 15 de septiembre de 2000, la cual fue notificada el 25 de septiembre del mismo año.

Así las cosas, el 28 de octubre de 2000, la parte recurrida presentó una Moción de Solicitud de Prórroga para contestar la demanda instada por la peticionaria. Posteriormente, el 10 de noviembre del mismo año, la recurrida presentó la Contestación a la Demanda y Solicitud de Traslado, alegando que no era responsable por la deuda reclamada. A su vez presentó Demanda de Co-parte contra su esposo, el Sr. Lucena López. Se denegó la demanda de coparte y el traslado se pospuso hasta la comparecencia del codemandado. Este último nunca compareció.

El 1 de febrero de 2001, Caribbean Produce Exchange presentó Solicitud de Anotación de Rebeldía y Sentencia Parcial en contra de Pedro Lucena y la Sociedad Legal de Gananciales. Por esta razón, el Tribunal de

Primera Instancia emitió una sentencia parcial el 6 de marzo de 2001, condenándolos a pagar las sumas reclamadas.

Habida cuenta de ello, la recurrida Lilly I. Ramos presentó el 16 de abril de 2001 Moción Urgente de Reconsideración de Sentencia referente a la Sociedad Legal de Gananciales, ya que ella había contestado la demanda el 10 de noviembre de 2000, por lo que no procedía la anotación en rebeldía.

El 25 de abril de 2001, la peticionaria compareció mediante Moción Interesando Ejecución de Sentencia y escrito de Señalamiento de Bienes en Ejecución de Sentencia, para embargar bienes pertenecientes a la Sociedad Legal de Gananciales. También presentó Réplica a Moción Solicitando Reconsideración el 1 de junio de 2001.

Después de una serie de trámites, el 7 de septiembre de 2001, Caribbean Produce Exchange reiteró su solicitud de ejecución de sentencia. El 6 de noviembre de 2001, el TPI ordenó la ejecución de sentencia contra Pedro A. Lucena López y la Sociedad Legal de Bienes Gananciales. El 4 de diciembre de 2001, se expidió el mandamiento de embargo bajo el fundamento de que el 6 de marzo de 2001 se había emitido sentencia parcial contra los mencionados codemandados. Por tal razón, se embargó en el Departamento de Educación dinero perteneciente a la Sociedad Legal de Bienes Gananciales. Posteriormente, el 12 de septiembre de 2002, la Sra. Ramos presentó una Moción Ampliando la Solicitud de Reconsideración. La parte peticionaria sometió Réplica a Moción Ampliando la Solicitud de Reconsideración el 5 de noviembre de 2002.

Luego de considerar los escritos sometidos por ambas partes, el tribunal *a quo* acogió la moción de reconsideración presentada por la recurrida, razón por la cual dictó sentencia parcial enmendada el 8 de noviembre de 2002, condenando únicamente al demandado Pedro A. Lucena López a pagar la suma reclamada.

Ante la sentencia notificada el 13 de diciembre de 2002, Caribbean Produce Exchange instó una Moción Aclaratoria y/o Solicitud de Enmienda *Nunc Pro Tunc*, para que se enmendara la sentencia emitida donde se liberó a la Sociedad Legal de Gananciales.

Finalmente, la Sra. Lilly Ramos presentó un Memorando de Derecho donde solicitó que se desestimara la demanda contra ambas y que se determinara que el embargo había sido ilegal, por lo cual debía dejarse sin efecto. La peticionaria contestó las alegaciones con una Réplica a Memorando de Derecho.

El TPI consideró los planteamientos de ambas partes y el 28 de marzo de 2005, emitió una Resolución, notificada el 12 de mayo de 2005. En ella señaló que la recurrida había contestado la demanda conforme a derecho. Como consecuencia, era correcto desestimar la demanda contra Lilly Ramos Román y la Sociedad Legal de Bienes Gananciales. Añadió además que el embargo efectuado fue incorrecto e ilegal, ya que no se le notificó a la Sra. Ramos y la sociedad compuesta por ambos.

De las facturas presentadas por Caribbean Produce Exchange, surge que la mercancía fue vendida al Sr. Pedro Lucena y al Sr. Moisés Caraballo. Por esta razón, el tribunal *a quo* decidió que la responsabilidad era personal y solidaria entre estas dos personas y que no tenía que ver con las recurridas. A su vez señaló que el Sr. Moisés Caraballo era parte indispensable, por lo cual ordenó a la peticionaria que lo incluyera en el pleito.

Inconforme con dicho dictamen, Caribbean Produce Exchange acude ante nos.

**II**

En su recurso, la peticionaria nos solicita que revoquemos al foro de primera instancia. Como primer error señala:

*"Erró el Tribunal de Primera Instancia al desestimar la demanda contra la recurrida, Lily I. Ramos Román,*

*y la Sociedad Legal de Gananciales compuesta por ella y su esposo, el co-demandado Pedro A. Lucena López."*

La adecuada adjudicación de la controversia planteada en el caso de autos requiere que comencemos examinando las disposiciones relativas a la responsabilidad de la sociedad legal de gananciales en torno a las obligaciones.

El Art. 1301 del Código Civil, 31 L.P.R.A. sec. 3641, dispone:

*"Son bienes gananciales:*

*1. Los adquiridos por título oneroso durante el matrimonio a costa del caudal común, bien se haga la adquisición para la comunidad, bien para uno sólo de los esposos.*

*2. Los obtenidos por la industria, sueldo o trabajo de los cónyuges o de cualquiera de ellos.*

*3. Los frutos, rentas o intereses percibidos o devengados durante el matrimonio, procedentes de los bienes comunes o de los peculiares de cada uno de los cónyuges."*

Por su parte, el Art. 91 del Código Civil, *supra*, expone que *"ambos cónyuges serán los administradores de los bienes de la sociedad conyugal, salvo estipulación en contrario, en cuyo caso uno de los cónyuges otorgará mandato para que el otro actúe como administrador de la sociedad"*. Entre tanto, el Art. 93 del Código Civil, *supra*, preceptúa que *"salvo lo dispuesto en el Artículo 91 de este código, cualquiera de los cónyuges podrá representar legalmente a la sociedad conyugal. Cualquier acto de administración unilateral de uno de los cónyuges obligará a la sociedad legal de gananciales y se presumirá válido a todos los efectos legales"*.

Habida cuenta de ello, durante la existencia de la sociedad legal de gananciales, los cónyuges son codueños y coadministradores de la totalidad del patrimonio matrimonial, sin distinción de cuotas. *"La masa ganancial está compuesta por bienes y derechos, que estando directa e inmediatamente afectos al levantamiento de las cargas familiares, son de titularidad conjunta de los cónyuges sin especial atribución de cuotas"*. Joaquín J. Rams Albesa, *La Sociedad de Gananciales*, pág. 28 (1992).

Cónsono con lo anterior, el Art. 1308 del Código Civil, *supra*, dispone: *"serán de cargo de la sociedad de gananciales: 1) Todas las deudas y obligaciones contraídas durante el matrimonio por cualquiera de los cónyuges (...)"*. Según lo expresado anteriormente, cualquiera de los cónyuges puede obligar a la sociedad legal de gananciales mediante un acto llevado a cabo unilateralmente, sin requerir el consentimiento de la otra parte. Sin embargo, esta norma general tiene una excepción, pues se ha excluido de responsabilidad a la sociedad legal compuesta por ambos cuando las deudas u obligaciones son contraídas sin beneficio de la familia.

Se ha resuelto que *"serán de cargo de la sociedad de gananciales los prestamos personales incurridos durante el matrimonio por cualquiera de los cónyuges, mas no los tomados para el propio beneficio del prestatario, los no encaminados a servir el interés de la familia o los efectuados con el ánimo de perjudicar o defraudar al otro cónyuge"*. *Banco del Ahorro del Oeste v. Santos*, 112 D.P.R. 70, 78 (1982). Ahora bien, *"la carga de la prueba reposa inicialmente en el cónyuge que niega su responsabilidad o la de la sociedad de gananciales"* *Banco del Ahorro del Oeste*, *supra*. Debido a que se ha establecido una presunción de gananciabilidad, ésta puede ser rebatida por la parte que alegue que no es culpable de la obligación contraída.

Refiriéndose a lo expuesto anteriormente sobre en quién recae el peso de la prueba, nuestro más alto foro resolvió en *WRC Props., Inc. v. Santana*, 116 D.P.R. 127, 135 (1985), que *"de estas decisiones se desprenden las siguientes normas como criterios de aproximación judicial: (1) la deuda u obligación debe servir a un interés de la familia y no estar predicada en un ánimo fraudulento u oculto de perjudicar a uno de los cónyuges; (2) la*

*carga de la prueba reposa en el cónyuge o la sociedad de gananciales que niegue responsabilidad. Esa carga puede invertirse con facilidad, "[s]i tal cónyuge demuestra prima facie no haber recibido beneficio alguno de la obligación contraída, entre otros casos (...)", y (3) una vez controvertida la presunción, la responsabilidad de la sociedad legal de gananciales es subsidiaria, previa excusión de bienes conforme lo dispuesto en el Art. 1310 del Código Civil, 31 L.P.R.A. §3663".*

Por otro lado, para que se pueda llevar acabo la excusión de bienes, tiene que haber primero la disolución del matrimonio. Se ha señalado que *"la disolución del matrimonio provoca ipso facto la extinción de la sociedad legal de gananciales, pues la causa de esta institución, la consecución de los propósitos del matrimonio, se desvanece ante la rotura del vínculo civil entre los cónyuges". Montalván Ruiz v. Rodríguez Navarro,* **2004 J.T. S. 48**. Asimismo, el Art. 95 del Código Civil, *supra,* señala que *"el vínculo del matrimonio se disuelve en los siguientes casos: 1) por la muerte del marido o de la mujer, 2) por el divorcio legalmente obtenido, y 3) si el matrimonio se declarase nulo".* Al extinguirse el matrimonio, se disuelve la sociedad legal de gananciales.

Referente al divorcio, el Art. 105 del Código Civil, *supra,* expone *"el divorcio lleva consigo la ruptura completa del vínculo matrimonial y la separación de propiedad y bienes de todas clases entre los cónyuges".* De esa manera, surge entonces una comunidad de bienes compuesta por todos los bienes del haber ganancial, en la cual cada partícipe posee una cuota independiente e alienable con el correspondiente derecho a intervenir en la administración de la comunidad y a pedir su división. J.L. Lacruz Berdejo, *Elementos de Derecho Civil IV, Derecho de Familia,* Ed. José María Bosch, Madrid, 1997, pág. 353.

Puntualizamos además que la *"separación de bienes y de propiedad provista con el divorcio y el surgimiento de una comunidad de bienes, en la práctica, la liquidación de los bienes comunes entre los ex cónyuges, no es necesariamente contemporánea a la disolución del vínculo matrimonial". Montalván Ruiz v. Rodríguez Navarro, supra; Calvo Mangas v. Aragonés Jiménez,* 115 D.P.R. 219, 228 (1984); *García López v. Méndez García,* 102 D. P.R. 383, 395 (1974).

Conforme a lo anterior, *"al momento de disolverse la sociedad de gananciales subsisten sus activos y pasivos, pero en renglones separados pendientes de liquidación. Si esta última operación se pospone, el monto de los activos y de los pasivos puede variar; pueden producirse frutos, saldarse deudas, sufrirse pérdidas, obtenerse ganancias o incurrirse en gastos con relación al caudal común". Montalván Ruiz v. Rodríguez Navarro, supra.*

Consecuentemente, el Art. 101 del Código Civil, *supra,* plantea *"desde el día en que el procedimiento de disolución se inicie judicialmente, no será válida ninguna deuda contraída ni transacción efectuada por cualquiera de los cónyuges sin la autorización del Tribunal, a cargo de los bienes gananciales".* Es exactamente por lo mencionado en el antedicho artículo que las deudas adquiridas después de iniciado el proceso de separación son privativas del cónyuge que se obliga. Sin embargo, el Art. 1331 del Código Civil expresa *"la separación de bienes no perjudicará a los derechos adquiridos con anterioridad por los acreedores".*

Dado lo anterior, se reconoce entonces que la sociedad legal de gananciales responde por todas las obligaciones incurridas en el transcurso del matrimonio. Una vez se disuelve la institución, se forma una comunidad de bienes entre los cónyuges. Ahora bien, todas las deudas adquiridas con anterioridad a la existencia de la comunidad, serán de cargo a la sociedad legal de gananciales. Resulta pues, que todos los derechos obtenidos por los acreedores antes del rompimiento del vínculo matrimonial, serán satisfechos con los activos de la comunidad.

## III

Tomando en consideración la normativa antes esbozada y aplicándola a los hechos del caso, concluimos que las deudas contraídas por el Sr. Lucena López durante la vigencia del matrimonio, son obligación de la sociedad legal de gananciales.

En el caso de marras, aunque el negocio pertenecía a ambos, quien lo administraba era el Sr. Lucena. Como administrador del negocio, éste podía obligar a la sociedad legal de gananciales, independientemente de que el acto fuese llevado acabo unilateralmente. Dichas acciones son válidas y tienen toda eficacia de ley.

Se desprende de la resolución que hoy resolvemos que el tribunal *a quo* responsabilizó solamente al Sr. Pedro Lucena por las deudas. Sin embargo, no surge de las alegaciones que la recurrida, quien tiene el peso de la prueba, haya rebatido la presunción de gananciabilidad de la obligación incurrida. Tampoco se ha alegado que los negocios efectuados por el Sr. Lucena fueron en perjuicio de la familia o para su propio beneficio. Además, surge de las facturas reclamadas por la peticionaria, que el Sr. Pedro Lucena contrajo la mayoría de las deudas estando casado con la Sra. Lilly Ramos. Forzoso es concluir entonces, que el patrimonio matrimonial aumentó y se benefició como resultado de los negocios llevados acabo por éste. Por esta razón, los activos de la sociedad responden por todo lo que se obligó el Sr. Lucena López como administrador del negocio.

No obstante, las obligaciones contraídas después de presentada la demanda de divorcio, o sea el 12 de enero de 1999, tienen que ser dilucidadas en su día para ver si van a ser de cargo a la sociedad legal de gananciales o privativas del Sr. Pedro Lucena. Si el TPI decidiera que las deudas son privativas y que serán satisfechas por la sociedad, entonces la Sra. Ramos podrá reclamar un crédito a su favor al momento de la división de los bienes.

Así pues, tomando en consideración los hechos del caso y las disposiciones aplicables a la sociedad legal de gananciales, concluimos que erró el tribunal *a quo* al imponerle únicamente responsabilidad al Sr. Lucena López y liberar a la Sociedad Legal de Gananciales de la obligación.

### IV
Como segundo error, el peticionario señala en su recurso que:

*"Erró el Tribunal de Primera Instancia al disponer que el embargo fue ilegal y en su consecuencia ordenar al Departamento de Educación consignar el mismo en el caso de División de Bienes del TPI, Sala Superior de Ponce".*

Respecto al embargo, la jurisprudencia ha resuelto que:

*"El embargo es una interdicción jurídica en el patrimonio del deudor, decretada a petición ex parte del acreedor reclamante. Uno de sus efectos procesales es el de sujetar o adscribir los bienes embargados al cumplimiento de la obligación o reclamación en el proceso principal, es decir, asegurar la efectividad de la sentencia que haya de dictarse en el caso de prosperar la acción ejercitada. Como medida cautelar o asegurativa. su vida o eficacia depende de la acción entablada."* Alum Torres v. Campos del Toro, 89 D.P.R. 305, 321 (1963).

Es decir, el embargo es una acción accesoria, y su validez, como regla general, depende del resultado de la acción principal. Está encaminado a preservar la capacidad económica de un deudor, y en consecuencia permitir a un acreedor en última instancia vindicar su derecho. *Fresh-O-Baking v. Molinos*, 103 D.P.R. 509, 518 (1975).

El Art. II, Sec 7 de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A., Tomo 1, al igual que las Emdas. V y XIV de la Constitución de Estados Unidos, L.P.R.A., Tomo 1, garantizan que: *"Ninguna persona será privada de su libertad o propiedad sin un debido proceso de ley..."*.

El debido proceso de ley se manifiesta en dos dimensiones distintas: sustantiva y procesal. En el debido procede de ley procesal se le impone al Estado la obligación de garantizar que la interferencia con los intereses de libertad y propiedad del individuo se haga a través de un procedimiento que sea justo y equitativo. *Rivera Rodríguez & Co. v. Lee Stowell, ect.,* 133 D.P.R. 881, 888 (1993); *Lopez Vives v. Policia de P.R.,* 118 D.P.R. 219

(1987). La privación de la libertad o propiedad sin notificación u oportunidad de ser oído se ha considerado siempre ajeno al debido proceso (...), *Rivera Rodríguez & Co. v. Lee Stowell, ect., supra*, 889.

El dinero embargado en el Departamento de Estado pertenecía a la Sociedad Legal de Bienes Gananciales. A tales efectos y para cumplir con el debido proceso de ley, correspondía notificar a la recurrida de la ejecución de su patrimonio. Como propietaria de la mitad del caudal correspondiente a la sociedad legal, ella tenía derecho a ser notificada de que se le iba a privar de su propiedad. Llevar a cabo este proceso, sin una adecuada notificación, violentó su derecho a un debido proceso de ley y la oportunidad de participar en la tramitación del embargo.

Por consiguiente, concurrimos con el Tribunal de Primera Instancia al concluir que el embargo ejecutado por Caribbean Produce Exchange contra el Sr. Pedro Lucena y la Sociedad Legal de Gananciales fue uno ilegal y debe dejarse sin efecto hasta que se diluciden las otras controversias presentadas en el caso de autos.

## V

Finalmente y como señalamos anteriormente, el tribunal *a quo* determinó que el Sr. Moisés Caraballo era parte indispensable para adjudicar el pleito. Resulta pues que la parte peticionaria indica como último error que:

*"Erró el Tribunal de Primera Instancia al determinar que falta parte indispensable y en su consecuencia al ordenar a la peticionaria incluir a dicha parte en el pleito."*

A tales fines, la Regla 16 de Procedimiento Civil, 32 L.P.R.A. Apéndice III, provee lo siguiente sobre parte indispensable:

*"16.1 Acumulación indispensable:*

*Las personas que tuvieren un interés común sin cuya presencia no pueda adjudicarse la controversia, se harán partes y se acumularán como demandantes o demandados según corresponda. Cuando una persona que deba unirse como demandante rehusare hacerlo, podrá unirse como demandada.*

*16.2 Acumulación no indispensable:*

*El tribunal podrá ordenar la comparecencia de aquellas personas sujetas a su jurisdicción, que a pesar de no ser partes indispensables, deban ser acumuladas si se ha de conceder un remedio completo a las personas que ya sean partes en el pleito."*

Respecto a la Regla 16.1 de Procedimiento Civil, *supra*, se resolvió que *"dicho precepto procesal se inspira en dos axiomas que preordenan nuestro quehacer jurídico. El primero es la protección constitucional que impide que persona alguna sea privada de la libertad sin el debido proceso de ley, Artículo II, Sección 7, Constitución del Estado Libre Asociado de Puerto Rico (citas omitidas). El segundo, es la necesidad de incluir a una parte indispensable para que el decreto judicial emitido sea uno completo," Cepeda Torres v. García Ortiz*, 132 D.P.R. 698, 704 (1993).

El Tribunal Supremo en el caso de *Hernández Agosto v. López Nieves*, 114 D.P.R. 601 (1983), examinó la Regla 16.1 de Procedimiento Civil, *supra*, y estableció el alcance de lo que es *"interés común"* y la frase *"sin cuyo remedio no pueda adjudicarse la controversia"*. En vista de ello, resolvió que la primera no es cualquier interés en el pleito, sino *"un interés de tal orden que impida la confección de un decreto sin afectarlo", Id.*, 607. *"[E]l interés afectado tiene que ser de índole real e inmediata," Id.*, págs. 610-611. Asimismo, la segunda frase está relacionada con la *"indispensabilidad"* de una parte. *Id.* 607-608, Veáse además, *Municipio de Ponce v. Autoridad de Carreteras*, **2001 J.T.S. 3**, pág. 653.

Por otro lado, refiriéndose a cómo debe de ser interpretada la Regla 16 de Procedimiento Civil, nuestro más Alto Foro ha optado por un enfoque práctico y señala que "*la acumulación obligatoria de partes ahora debe ser el resultado tan sólo de consideraciones pragmáticas, de la evaluación de los intereses envueltos, lo que exige distinguir entre diversos géneros de casos.*" *Granados v. Rodríguez Estrada II*, 124 D.P.R. 593, 603 (1989); *Hernández Agosto v. López Nieves, supra*, 606.

A tono con ello, la jurisprudencia nos indica que "*parte indispensable*" es un concepto que entronca con la cláusula constitucional del debido proceso de ley. *Aponte Carattini v. Román*, 145 D.P.R. 477. Una parte indispensable es la persona cuya comparecencia es necesaria para que sus derechos queden protegidos al amparo de dicha cláusula, al punto que si el tribunal no adquiere jurisdicción sobre ella, la sentencia a ser dictada no sería válida. *Reyes v. E.L.A.*, 150 D.P.R. 599, 608; *Unisys v. Ramallo Brothers*, 128 D.P.R. 842, 859 (1991).

El propósito principal de tal disposición es proteger a las personas ausentes de los efectos perjudiciales que pudiera tener la resolución del caso sin su presencia y evitar la multiplicidad de pleitos mediante un remedio efectivo y completo. *Mun. de San Juan v. Bosque Real, Inc.*, 158 D.P.R. ___, **2003 JTS 33**; *Rodríguez Rodríguez v. Moreno Rodríguez*, 135 D.P.R. 623, 627 (1994); *Hernández Agosto v. Romero Barceló*, 112 D.P.R. 407 (1982).

Asimismo, la frase "*remedio completo*" tiene un significado especial. Ésta no debe interpretarse conforme a criterios estrictamente semánticos. "*El remedio completo a que se refiere la Regla 16 alude al remedio entre las personas y entidades que ya son partes en el pleito y no al obtenible entre una parte y el ausente.*" (Énfasis en el original) *Mun. de San Juan v. Bosque Real Inc, supra; Hernández Agosto v. López Nieves, supra.*

Para determinar si se debe acumular una parte, es necesario evaluar los hechos particulares de cada caso. En dicho análisis deben tomarse en cuenta factores tales como: tiempo, lugar, modo, clase de derechos, alegaciones, prueba, intereses en conflicto, formalidad y resultado. *Sánchez v. Sánchez*, 154 D.P.R. ___, **2001 JTS 112**. La exclusión de una parte indispensable es de tan vital importancia que puede ser levantada por primera vez a nivel apelativo e incluso por el tribunal *sua sponte*. *Martínez Soria, Ex parte*, 139 D.P.R. 257, 263 (1995); *Aponte Carattini v. Roman, supra*.

Así pues, al ejercer su discreción, el tribunal debe considerar, entre otras cosas, si puede dictar una sentencia que ponga punto final a la controversia entre las partes que ya están ante el tribunal, sin la acumulación solicitada. *Granados v. Rodríguez Estrada, supra*, pág. 604.

Resulta, al examinar los hechos del caso, guiados por la normativa que hemos reseñado, que el Sr. Moisés Caraballo no es parte indispensable en este pleito, puesto que su comparecencia no es necesaria para que el tribunal de instancia pueda adjudicar la controversia y conceder un remedio efectivo y completo. A tenor con lo dispuesto anteriormente, el concepto de parte indispensable se refiere a aquella parte cuyos derechos podrían resultar destruidos o afectados por la sentencia que en ausencia de éste se dictara o sin cuya presencia el tribunal está impedido de adjudicar la controversia en su totalidad.

Los derechos e intereses del Sr. Caraballo no quedarían afectados por el decreto que el tribunal *a quo* emita en su día. Lo que sí es primordial que se dilucide para solucionar la controversia ante nos, son los derechos y obligaciones entre el Sr. Lucena y las recurridas. El resultado de la polémica entre estas partes sobre quien tiene que pagar la deuda reclamada por la peticionaria, no concierne directamente la persona del Sr. Moisés Caraballo. Como resultado, solo se afectaría el patrimonio de los ex-conyuges.

Asimismo concluimos que su comparecencia no es necesaria para que sus derechos queden protegidos. Cualquiera de las partes puede traer al Sr. Caraballo mediante el mecanismo de la demanda contra tercero conforme la Regla 12.1 de Procedimiento Civil. Incluso podrían optar por una acción de nivelación para reclamar a éste el dinero que les pueda adeudar, luego de dictada la sentencia en su contra. Por tal razón, entendemos que

no incluir en el pleito a la antedicha persona, no va a impedir la concesión de un remedio completo para las partes en el pleito.

Por los fundamentos antes expuestos, devolvemos el caso al Tribunal de Primera Instancia, para que resuelva quién va a responder por las obligaciones contraídas después de presentada la demanda de divorcio.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones